**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| | ) | Case No. 04-B-24393 |
| VICKI E. ESRALEW | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| ROLLIN J. SOSKIN, EUGENE | ) | |
| TERRY, NICOLE TERRY and | ) | |
| TERRY'S COMPANY, INC. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | Adversary Proceeding |
| | ) | No. |
| | ) | |
| VICKI E. ESRALEW, ROBERT | ) | |
| AREN and NEIL A. REISMAN, | ) | **04A03774** |
| | ) | |
| Defendants. | ) | |

## ADVERSARY COMPLAINT

NOW COME the Plaintiffs, Rollin J. Soskin, Eugene Terry, Nicole Terry and Terry's

Company, Inc., by and through their attorney, Thomas C. Crooks, and file this Adversary Complaint

pursuant to 11 U.S.C. §523 against the Defendants, Vicki E. Esralew (hereinafter "Esralew"), Robert

Aren (hereinafter "Aren") and Neil A. Reisman, (hereinafter "Reisman") and in support thereof state

as follows:

1. Esralew filed a Petition under Chapter 7 of the Bankruptcy Code on June 29, 2004.

2. Aren is and, at all relevant times hereto, was the husband of Esralew. Aren has not

joined in the bankruptcy petition filed by Esralew.

3. Reisman is a former officer of Vickilew, Inc. (hereinafter "Vickilew").

4. At the time of filing, Esralew and Aren were indebted to Plaintiffs pursuant to a

certain Memorandum of Agreement (hereinafter "Agreement") entered into by the parties on

November 22, 1998. The Agreement was modified in part by a letter agreement dated February 24, 1999. A copy of such Agreement along with a copy of the modification letter of February 24, 1999 is attached hereto as Group Exhibit A.

5.   At the time of entering into the Agreement Esralew and Aren informed Soskin and the Terrys that they had sought and received independent legal advice. Prior to entering into the Agreement Esralew and Aren proposed changes to the Agreement based upon advice from legal counsel.

6.   After Soskin filed suit to enforce the Agreement Esralew and Aren claimed that they had been represented by Soskin relative to entering into the Agreement and that the Agreement was void due to a purported conflict of interest, notwithstanding a signed aiver of any conflict on the part of Soskin contained within the Agreement

7.   Pursuant to the Agreement, Soskin became a member of Kids Count Entertainment, L.L.C. (hereinafter "the L.L.C."), a limited liability corporation 92% of which is owned by Esralew and Aren. Pursuant to the Agreement Soskin had certain ownership and management rights relative to the L.L.C.

8.   Pursuant to the Agreement Eugene Terry, Nicole Terry and Terry's Company, Inc. (hereinafter "The Terrys") loaned in excess of $200,000.00 to the L.L.C., took a security interest in the inventory, receivables and other assets of the L.L.C. and retained an option to convert the debt into as much as 10% of the L.L.C. Pursuant to the Agreement the Terrys also had certain management rights relative to the L.L.C.

9.   The Terrys made appropriate U.C.C. filings with the State of Illinois formalizing their security interest in the inventory, receivables and other assets of the L.L.C. (see attached Exhibt C).

10.    Pursuant to Section 9.4 of the Operating Agreement of the L.L.C. (hereinafter "Operating Agreement"), the secretary of the L.L.C. is required to send to each member monthly financial reports prepared by the L.L.C. and an annual compilation report prepared by independent accountants. To date, no such reports have been received by Soskin.

11.    Pursuant to Section 9.2 of the Operating Agreement, Soskin is entitled to examine the financial and business records of the L.L.C.

12.    A written request for such examination has been submitted to Esralew, as the L.L.C.'s registered agent. A copy of such request is attached hereto as Exhibit B.

13.    To date such request has not been honored, nor has a reply been received.

14.    Pursuant to Paragraph 12 of the Agreement, the parties to the Agreement were to meet not less often than every fourteen days to review various financial data.

15.    From and after May of 1999, Defendants have refused to communicate directly with Soskin or with the other parties of the Agreement, or to provide any information whatsoever about the activities of the L.L.C. or of Esralew.

16.    Some time after May of 1999 Esralew and, upon information and belief, Aren, created or participated in the creation of an internet web site through which products owned, created and/or developed by the L.L.C. or are based on ideas and concepts owned by the L.L.C. and/or the creative efforts of Esralew, which were exclusively promised to the L.L.C., are offered for sale to the public.

17.    Upon information and belief, defendants Esralew and Aren have and continue to engage in other marketing strategies in order to sell products which were owned, created and/or developed by the L.L.C. or are based on ideas and concepts owned by the L.L.C. and/or the creative efforts of Esralew, which were exclusively promised to the L.L.C.

18.    Upon information and belief Esralew and Aren have created one or more new business entities in order to sell said products through the web site and through other means, without sharing the revenues with the L.L.C.

19.    Esralew and Aren, sometime in or after May of 1999, created or participated in the creation of a website, namely Vickilew.com, in order to market and sell products which were owned, created and/or developed by the L.L.C. or are based on ideas and concepts owned by the L.L.C. and the creative efforts of Esralew, which were exclusively promised to the L.L.C.

20.    Esralew and Aren, sometime in or after May of 1999, created the business entity Vickilew, Inc., a Delaware corporation, (hereinafter "Vickilew") for the purpose of selling products which were owned, created and/or developed by the L.L.C. or are based on ideas and concepts owned by the L.L.C. and the creative efforts of Esralew, which were exclusively promised to the L.L.C.

21.    Sometime after May of 1999 Esralew and Aren, secretly and without notice to Soskin or the Terrys, transferred substantially all the assets of the L.L.C. to Vickilew, including inventory, receivables, good will, intellectual property and Esralew's creative services.

22.    Following the transfer of assets to Vickilew, Vickilew made a private offering in an attempt to attract more investors and raise $4,000,000.00. Upon information and belief, Vickilew raised a substantial amount of money which was to Esralew's benefit and to the detriment of Soskin and the Terrys.

23.    The products being sold, as alleged in paragraphs 16 through 20, are the property of the L.L.C. and, pursuant to the parties' agreement, Soskin has a right to share in the income derived from the sale of products and concepts owned by the L.L.C. The Terrys have a right to receive

4

payments against their loans from any of the inventories sold and receivables received, s a result of their security interest.

24.     Soskin and the Terrys have fulfilled all of their promises and obligations under the parties' written Agreement and provided all of the consideration required of them under the parties' Agreement.

25.     Esralew and Aren willingly accepted and personally benefited from the consideration provided by Soskin and the Terrys.

26.     Esralew and, upon information and belief, Aren have breached the parties agreement as specified in paragraphs 13 through 23 as well as in the following ways:

(a)     By providing Esralew's creative efforts and activities to business entities other than the L.L.C. in violation of paragraph 18 of the Agreement;

(b)     By making disbursements in excess of $2,000.00 from Kids Count Entertainment, L.L.C.'s bank account without the requisite signatures in violation of paragraph 3 of the Agreement;

(c)     By failing to deposit all receipts of the L.L.C. into its bank account at the LaSalle Bank in violation of paragraph 3 of the Agreement;

(d)     By refusing to permit Soskin and the Terrys to participate in the management of the L.L.C. in violation of paragraphs 9 and 12 of the agreement;

(e)     By failing to pay to Soskin his share of the revenues from any and all of the defendant entities in which plaintiff owns a percentage share;

(f)     By failing to pay the Terrys the proceeds from the sale of inventory and receivables over which the Terrys hold a security interest;

(g)    By accepting all of the consideration provided by Soskin and then denying Soskin's ownership interest in the L.L.C.;

(h)    upon information and belief, in other ways as yet unknown to the Soskin and the Terrys.

27.    Esralew and Aren did not intend to honor the Agreement at the time they entered into it, but, rather, executed the agreement in bad faith in order to induce Soskin and the Terrys to provide services and invest money.

28.    Defendants engaged in the following fraudulent, deceitful and bad faith acts relative to the Agreement:

(a)    Esralew and Aren told Soskin and the Terrys prior to the execution of the Agreement that they needed money quickly in order to produce television and radio commercials and get them on the air for the Christmas shopping period. In fact, defendants knew prior to the execution of the Agreement that it was already too late to put together an effective advertising campaign for the Christmas shopping period;

(b)    Defendants engaged in the deception described in paragraph 28(a) in order to induce Soskin and the Terrys into entering into the Agreement and thus providing cash to the L.L.C. which benefited Esralew and Aren who were drawing salaries;

(c)    Within days of executing the Agreement defendants began to withhold information from Soskin and the Terrys relative to the business. Within days of executing the Agreement Esralew instructed the L.L.C.'s media buyer, Robert Blagman, not to provide information to Soskin and the Terrys concerning potential new investors which Esralew and Aren were seeking and other business information which Soskin and the Terrys had a right to

receive under the Agreement.

(d)    Esralew and Aren willfully refused to take steps required of them under the Operating Agreement to perfect Soskin's and the Terry's interest in the L.L.C., although affirmative action was required of them under the L.L.C. Operationg Agreement.

(e)    Esralew and Aren willfully withheld the L.L.C. Operating Agreement from Soskin and the Terrys at the time the Agreement was being negotiated and for a substantial time after execution of the Agreement in order to prevent Soskin and the Terrys from complying with any requirements of the Operating Agreement which might be necessary to perfect their interest.

29.    Soskin and the Terrys are informed and believe that defendants have engaged in other acts of deception and bad faith relative to these transactions.

## COUNT I
### (11 U.S.C. §523(a)(2)(A))

30.    Soskin and the Terrys allege paragraphs 1-29 as paragraphs 1-29 of Count I of the Complaint.

31.    When Esralew and Aren entered into the Agreement they had no intention of keeping the promises made in the Agreement, but, rather, made the promises in order to induce Soskin into providing management and legal services to the L.L.C. at no charge, as well as to induce the Terrys into loaning large sums of money to the L.L.C. which Esralew and Aren had no intention of repaying.

32.    The debts owed to Soskin and the Terrys should not be discharged pursuant 11 U.S.C. §523(a)(2)(A).

WHEREFORE, the Plaintiffs, Soskin and the Terrys, respectfully request that this Court

enter an Order as follows:

(a)    providing that the debts owed to Soskin and the Terrys by Esralew not be discharged pursuant to 11 U.S.C. §523(a)(2)(A);

(b)    that a judgment be entered against Aren and Esralew and in favor of Soskin in an amount to be determined by this Court in excess of $50,000.00;

(c)    that a judgment be entered against Aren and Esralew and in favor of the Terrys in an amount to be determined by this Court in excess of $50,000.00;

(d)    and for all other relief this Court deems just and necessary.

## COUNT II
### (11 U.S.C. §523(a)(2)(A))

33.    Soskin and the Terrys allege paragraphs 1-32 as paragraphs 1-32 of Count II of the Complaint.

34.    On or about March 23, 2004, without notice to Soskin or the Terrys, Esralew and Aren transferred all of the assets of Vickilew to Rally Capital Services, Inc. in order to effectuate a purported assignment for the benefit of creditors. The assets transferred included assets in which Soskin had an ownership interest and the Terrys had a security interest, pursuant to the Agreement.

35.    On or about March 24, 2004 notice was purportedly sent to all of Vickilew, Inc.'s creditors informing them that all assets would be auctioned on April 13, 2004. Soskin was not given actual notice of this auction despite his claims against Esralew, Aren and Vickilew which were contained in a lawsuit then pending in Lake County Circuit Court, namely, *Soskin v. Kids Count Entertainment, Inc. et al.,* no. 01 CH 1269, in which Vickilew was a named defendant represented by counsel of record.

36.    The Terrys were also not given actual notice of the auction on April 13, 2004 despite

8

the fact that the Terrys had a security interest in the property being auctioned and a pending action seeking damages then pending in Lake County Circuit Court, namely *Eugene Terry, et al., v. Kids Count Entertainment, Inc., et al.*, no. 03 CH 1769.

37.    On March 15, 2004, in anticipation of the purported sale for the benefit of creditors, Reisman, Vice-President—Finance and Chief Administrative Officer, resigned his position with Vickilew.

38.    Upon information and belief, Reisman purchased the assets of Vickilew on or about April 13, 2004 for $100,000.00 pursuant to an agreed plan between Reisman, Esralew and Aren. The $100,000.00 was inadequate consideration for the assets received.

39.    After Reisman purchased Vickilew's assets he hired Esralew as an employee and, in effect, continued to operate Vickilew, under a different name, with all of Vickilew's debts having been erased by the purported assignment for the benefit of creditors. The purported assignment for the benefit of creditors was a sham instituted in order to erase debt and continue the same business..

40.    Upon information and belief, as part of the agreed plan Reisman, Esralew and Aren agreed not to give actual notice of the purported assignment for the benefit of creditors to Soskin and the Terrys so that neither Soskin nor the Terrys could contest the assignment or appear on the date of the auction and bid against Reisman for Vickilew's assets.

41.    Reisman, Esralew and Aren provided a list of creditors to Rally Capital, who managed the sale, and intentionally left Soskin and the Terrys off the list in order to prevent plaintiffs from receiving notice.

42.    As a result of the above, the assignment for the benefit of creditors has worked a fraud against Soskin and the Terrys.

43.    The debts owed to Soskin and the Terrys should not be discharged pursuant 11 U.S.C. §523(a)(2)(A).

WHEREFORE, the Plaintiffs, Soskin and the Terrys, respectfully requests that this Court enter an Order as follows:

(a)    providing that the debts owed to Soskin and the Terrys by Esralew not be discharged pursuant to 11 U.S.C. §523(a)(2)(A);

(b)    that a judgment be entered against Aren, Esralew and Reisman in favor of Soskin in an amount to be determined by this court in excess of $50,000.00;

(c)    that a judgment be entered against Aren, Esralew and Reisman in favor of the Terrys in an amount to be determined by this court in excess of $50,000.00;

(d)    and for all other relief this Court deems just and necessary.

## COUNT III
### (11 U.S.C. §523(a)(4))

44.    Soskin and the Terrys allege paragraphs 1-43 as paragraphs 1-43 of Count III of the Complaint.

45.    At all relevant times hereto defendants Esralew and Aren, by law and pursuant to the Agreement, owed fiduciary duties to Soskin and the Terrys as to the manner in which Esralew and Aren operated the L.L.C.

46.    Defendants breached their fiduciary duties to the plaintiff as described in paragraphs10 through 17.

47.    As a result of the breach of the fiduciary duties described above, plaintiffs have been damaged through the loss of income and the devaluation of the entity Kids Count Entertainment,

10

L.L.C.

48.    The debts owed to Soskin and the Terrys should not be discharged pursuant 11 U.S.C. §523(a)(4).

WHEREFORE, the Plaintiffs, Soskin and the Terrys, respectfully requests that this Court enter an Order as follows:

(a)    providing that the debts owed to Soskin and the Terrys by Esralew not be discharged pursuant to 11 U.S.C. §523(a)(4);

(b)    that a judgment be entered against Aren and Esralew and in favor of Soskin in an amount to be determined by this Court in excess of $50,000.00;

(c)    that a judgment be entered against Aren and Esralew and in favor of the Terrys in an amount to be determined by this Court in excess of $50,000.00;

(d)    and for all other relief this Court deems just and necessary.

## COUNT IV
### (11 U.S.C. §523(a)(6))

49.    Soskin and the Terrys allege paragraphs 1-48 as paragraphs 1-48 of Count IV of the Complaint.

50.    The actions of Esralew and Aren as described above were willfully and maliciously taken in order to avoid the payment of valid debts owed to Soskin and the Terrys, to deny Soskin his ownership rights in the L.L.C., and erase the Terry's security interest in the L.L.C.'s assets.

51.    The debts owed to Soskin and the Terrys should not be discharged pursuant 11 U.S.C. §523(a)(6).

WHEREFORE, the Plaintiffs, Soskin and the Terrys, respectfully requests that this Court enter an Order as follows:

(a)    providing that the debts owed to Soskin and the Terrys by Esralew not be

discharged pursuant to 11 U.S.C. §523(a)(4);

(b)    that a judgment be entered against Aren and Esralew and in favor of Soskin in an

amount to be determined by this Court in excess of $50,000.00;

(c)    that a judgment be entered against Aren and Esralew and in favor of the Terrys in

an amount to be determined by this Court in excess of $50,000.00;

(d)    and for all other relief this Court deems just and necessary.


Respectfully submitted,


Thomas C. Crooks,
Attorney for Plaintiff



Thomas C. Crooks
ARDC #00547336
Three First National Plaza, Suite 1950
Chicago, IL 60602
Office (312) 641-2260
Facsimile (312) 641-5220

12

## MEMORANDUM OF AGREEMENT

Vicki Esralew, Robert Aren (hereinafter collectively referred to as "Esralew), Eugene Terry, Nicole Terry and Terry's Company, Inc. (hereinafter collectively referred to as "Terry"), Rollin J. Soskin (hereinafter referred to as "Soskin"), and Kids Count Entertainment, Inc. and Kids Count Entertainment, L.L.C. (hereinafter collectively referred to as "Kids Count") have agreed as follows:

1.     Terry will invest $200,000 to $250,000 as December, 1998 through February, 1999 cash flow shall require.  Terry's Company, Inc. may purchase the new inventory and sell it to Kids Count as ordered, at a price that provides a 10% per annum return on the funds invested in inventory.  The balance of the investment by Terry will be a loan to Kids Count at the rate of 10% interest.  A financing statement will be filed with the Secretary of State in order to provide protection under the Uniform Commercial Code with respect to Terry's investment, secured by the assets of Kids Count.  The primary purpose of Terry's investment is to fund creation of commercials, purchase of air time and manufacture of required inventory.

2.     In addition to the investment described in paragraph 1, Terry will deposit the sum of $27,000 into a bank account in the name of Kids Count.  This portion of Terry's investment (the "receivable loan") is in the form of a purchase from Kids Count of certain receivables due from Discovery Toys - $12,855 scheduled to be received in December, and $14,145 of the $18,000 scheduled to be received in February. Immediately upon receipt, the instruments of payment of such amounts, or any portion thereof, shall be immediately turned over to Terry without deposit by Kids Count.  The original invoices for the aforementioned Discovery Toy invoices shall be marked "ASSIGNED TO EUGENE TERRY" and delivered to Soskin to hold.

3.     A new bank account at LaSalle Bank shall be created in the name of Kids Count Entertainment, L.L.C. into which Terry shall deposit the receivable loan and that portion of his investment which will be treated as a loan to the Kids Count. Disbursements in excess of $2,000 from such account shall be made only upon two signatures as follows: one signature to be either Eugene Terry, Nicole Terry, or Rollin J. Soskin; and one signature to be either Vicki Esralew or Robert Aren.  All receipts of Kids Count, regardless of source, shall be deposited into such bank account.

4.     It is anticipated that the receivable loan from Terry and collections from December sales will be sufficient to cover overhead.  From such amounts, Esralew shall be entitled to withdraw from Kids Count a sum not to exceed $12,000 per month, which may be taken, in Esralew's sole discretion, as salary or repayment of the loans to Kids Count previously made by Esralew or Aren, or in any combination thereof, provided that the total of gross compensation and loan repayment shall not exceed $12,000 per month.

PLAINTIFF'S
EXHIBIT
A

MEMORANDUM OF AGREEMENT - page 2

5.      From the receivable loan and subsequent sales, Kids Count shall pay to
Soskin a sum not to exceed $4,000 per month which Soskin may have paid as salary or
as legal fees to his law firm, in his sole discretion.  To the extent not taken in a
particular month, the sums payable to Esralew and Soskin shall accrue and be payable,
if and when cash flow allows.

6.      As part of the consideration for Terry's loan, Terry shall have a five (5)
year option to purchase ten (10%) percent of Kids Count Entertainment, L.L.C. for a
price of $250,000.  This sum may be paid by cash and/or cancellation of the Terry's
loans to the company.  For this purpose, the unpaid portion of Terry's investment in
inventory may be treated as part of Terry's loan upon transfer of any unpurchased
inventory to the Kids Count.  In the event of a refinancing in excess of two million
dollars or recapitalization of Kids Count with new value in excess of two million dollars
Kids Count may demand that Terry exercise or waive his option within ninety (90) days
of notice.

7. ·    As part of the consideration to Terry and to Soskin, Soskin shall
immediately receive a one (1%) percent interest in Kids Count Entertainment, L.L.C.
and shall have a five (5) year option to purchase eight (8%) percent of Kids Count
Entertainment, L.L.C. for the sum of $200,000.  In the event of a refinancing in excess
of two million dollars or recapitalization of Kids Count with new value in excess of two
million dollars Kids Count may demand that Soskin exercise or waive his option within
ninety (90) days of notice.

8.      In addition to the interest and the option granted to Soskin above, Soskin
shall immediately receive a one (1%) percent interest as incentive and in lieu of fees for
services to Kids Count, whether as attorney, employee, or otherwise, in excess of the
agreed upon $4,000 per month set forth in paragraph 5 above, for the period from
December 1, 1998 through such time as the salaries and compensation of Esralew and
Soskin are reviewed, based upon company performance, but in no event shall such
period of "free excess" services by Soskin extend beyond May 31, 1999.  It is
understood and agreed that Soskin will not work exclusively for Kids Count and has
other business interests, including a law practice.  Soskin shall not be required to
spend in excess of sixty (60) hours per month during such period without additional
compensation.

9.      It is agreed that any of the following actions shall require the unanimous
consent of Esralew, Terry and Soskin:

            (a)     incurring of any new debt beyond normal trade payables;
            (b)     issuance of any new stock or security or other interest convertible
                    in to an ownership interest in Kids Count;

MEMORANDUM OF AGREEMENT - page 3

(c)    sale or transfer of any interest in Kids Count owned by Esralew or Aren to anyone other than Esralew, Aren, Soskin or Terry or to Kids Count, without first offering such interest to Terry and Soskin upon the same terms and conditions as are offered by any proposed transferee.

10.    In the event of any sale or transfer by Kids Count or Esralew of any shares in Kids Count Entertainment, Inc. or Kids Count Entertainment, L.L.C., which results in Esralew owning less than 51% of Kids Count, Terry and Soskin shall have the right to "tag along" on a pro-rata basis at a price equal to the price at which Esralew's shares or interest are sold, and Esralew shall have the right to "bring-along" Terry and Soskin on a pro-rata basis at a price equal to the price at which Esralew's shares or interest are sold.

11.    Each party hereto has made such investigation of the facts and circumstances and the condition of Kids Count and of the other parties, and has engaged such attorneys. accountants, or other professionals as they have determined in their own discretion to be necessary or prudent in the circumstances.  Esralew, Terry, and Kids Count all hereby waive any actual or apparent conflict of interest resulting from the participation of Soskin in bringing Esralew, Aren and Kids Count together with the Terrys, or from the services of Soskin to, by or in regard to Kids Count, Terry and Esralew, or any of them, and from the representations made by any of the parties hereto to the others in order to induce them to enter into this agreement, and after due consideration, the parties agree to hold Soskin harmless and idemnified against any and all loss, cost and damages, including reasonable attorney's fees, resulting from any claims that Soskin represented one party or the other or was subject to a conflict of interest as between any of the parties to this agreement, or that any party made any material misrepresentation with respect to the transactions herein contemplated.

12.    The parties agree to meet not less often than every fourteen (14) days to review sales, inventory levels, cash position and other data relevant to Kids Count.

13.    The parties agree that because time is short and the investment of Terry is essential to Kids Count's chances of success, in large part as a result of the desire to have commercials on the air in time to take advantage of the Christmas gift season, this transaction is being documented by this simple memorandum rather than by all of the legal documents which this agreement contemplates.  The parties agree to enter into shareholder's agreements, option agreements, and other contracts and legal documents as may be necessary or customary, containing the provisions which are set forth herein (in addition to any other items as to which the parties may agree).  The parties agree to attempt to complete all such documentation by February 28, 1999.

MEMORANDUM OF AGREEMENT - page 4

14. The parties agree that the operating agreement of the limited liability company shall also be amended to reflect the provisions hereof, and it is agreed that Soskin, Esralew, Aren, and either of the Terrys shall be directors of Kids Count. In the event that Robert Leeper should be made a director, both of the Terrys shall be directors.

15. Esralew and Kids Count represent that the ownership of Kids Count Entertainment, L.L.C. is as follows: Robert Leeper - five (5%) percent; Harris Associates - one (1%) percent; Kids Count Entertainment, Inc. - ninety-four (94%) (Kids Count Entertainment, Inc. is owned 100% by Esralew and/or trusts for their children). Esralew and Kids Count represent that after this Memorandum of Agreement is signed, the ownership of Kids Count Entertainment, L.L.C. will be as follows: Harris Associates - one (1%) percent; Robert Leeper - five (5%) percent; Rollin J. Soskin - two (2%) percent; and Kids Count Entertainment, Inc. - ninety-two (92%), subject to the rights of Terry and Soskin to acquire the additional percentages set forth herein from Kids Count Entertainment, Inc., from Esralew, or from Kids Count Entertainment, L.L.C.

16. Esralew and Kids Count represent that the total debt (principal) of Kids Count Entertainment consists of the following: Jim Terra - $75,000; Harris Bank - $150,000; First National Bank - $73,933.34; Hudsucker Partners (Irving Harris) - $325,000; Vicki Esralew - $196.445; Feels Good Partners - $50,000; Steve Santowski - $75,000; Foley & Lardner - $18,000; Citibank Visa - $9,600 (credit card used exclusively for Kids Count expenses; Miscellaneous trade payables - $33,000 (includes $15,000 to Aultschuler, Melvoin & Glasser).

17. Esralew and Kids Count represent and warrant that the financial statements prepared as of October 20, 1998 are substantially true and correct except as to the status of Santowski as a shareholder.

18. Absent subsequent agreement to the contrary, Vicki Esralew agrees that all of her personal services, appearances, creative efforts, activities and products shall be performed and or created for the exclusive benefit of Kids Count.

19. It is understood and agreed that neither Soskin nor Terry shall be personally liable for any debts of Kids Count or any personal debts of Esralew.

MEMORANDUM OF AGREEMENT - page 5

20.    Acceptance by Esralew, Aren and Kids Count of the benefit of the services of Soskin and/or of the deposit of funds and/or the receipt of other benefits from Terry shall constitute their acceptance of all of the foregoing terms.

WHEREFORE, the parties have set their hands this _22_ day of November, 1998.

Kids Count Entertainment, Inc.

By: _____
Vicki Esralew, President

_____
Vicki Esralew

_____
Eugene Terry

_____
Rollin J. Soskin

Kids Count Entertainment, L.L.C.

By: _____
Vicki Esralew, Manager

_____
Robert Aren

_____
Nicole Terry

LAW OFFICES OF

# ROLLIN J. SOSKIN & ASSOCIATES

9933 LAWLER AVENUE • SUITE 312

SKOKIE, ILLINOIS 60077-3703

FAX (847) 674-8938

TELEPHONE (847) 329-9991

February 24, 1999

Mr. and Mrs. Eugene Terry
450 Central Avenue
Suite 214
Highland Park, Illinois 60035-2659

Mr. and Mrs. Robert Aren
1735 Country Club Drive
Long Grove, Illinois 60047

Re:   Waiver of Agreement Terms - Kids Count

Dear Nicole, Gene, Vicki and Bob:

As you are aware, Paragraphs 13 and 14 of our Agreement of November 22, 1998, provided, in pertinent part, that we would enter into more formal documentation of our relationship by February 28, 1999. Based on our recent discussions, and the fact that we are endeavoring to bring in additional equity participants, it is my understanding that we have agreed to put off the expense and time involved in preparing and reviewing such documents, until such time as we are more certain about the structure of Kids Count as it goes forward with other strategic partners. Based thereon, it is my understanding that we all agree to enter into such documents in the future, while waiving any requirement of our existing Agreement that such documents be completed in the short run.

On a related topic, since the direct response TV campaign has not been generating income as quickly as had been hoped, the Terrys have been financing the Company's continued existence by purchasing its receivables. It is my understanding that all parties agree, notwithstanding any specific document assigning each new receivable, that all receivables now belong to the Terrys or Terry's Company as applicable, and as they are collected are to be turned over in partial satisfaction of the Terry's receivable purchases. In the event that, from time to time, the Terrys allow the Company to retain collected receivables, such retention shall not be deemed a waiver of any rights of the Terrys, but, in essence, a purchase by the Terrys of those receivables collected by the Company subsequent to the receivables which have already been purchased by the Terrys and/or assigned to them.

Mr. and Mrs. Gene Terry
Mr. and Mrs. Robert Aren
February 24, 1999 - Page 2.


If the above accurately sets forth our understanding and agreement, please so indicate by signing the acknowledgement at the bottom of this letter and returning the same to me in the self-addressed envelope enclosed herewith for your convenience.

Very truly yours,

Rollin J. Soskin

RJS/ml

## Acknowledgement

The above accurately sets forth our understanding and agreement and represents a valid modification to the Agreement dated November 22, 1998.

Dated: ~~February~~ March 23, 1999

_____
Vicki Esralew

~~February 23~~ 1999

_____
Robert Aren

February _____, 1999

_____
Nicole Terry

February _____, 1999

_____
Eugene Terry

February _____, 1999

_____
Rollin J. Soskin

February _____, 1999

Kids Count Entertainment, Inc. and
Kids Count Entertainment, L.L.C.

By: _____
Vicki Esralew, as President and
as Manager, respectively

TOTAL P.03

LAW OFFICES OF

# ROLLIN J. SOSKIN & ASSOCIATES

9933 LAWLER AVENUE • SUITE 312

SKOKIE, ILLINOIS 60077-3703

FAX (847) 674-8938

TELEPHONE (847) 329-9991

February 24, 1999

Mr. and Mrs. Eugene Terry                         Mr. and Mrs. Robert Aren
450 Central Avenue                                1735 Country Club Drive
Suite 214                                         Long Grove, Illinois 60047
Highland Park, Illinois 60035-2659

Re:    Waiver of Agreement Terms - Kids Count

Dear Nicole, Gene, Vicki and Bob:

As you are aware, Paragraphs 13 and 14 of our Agreement of November 22, 1998, provided, in pertinent part, that we would enter into more formal documentation of our relationship by February 28, 1999. Based on our recent discussions, and the fact that we are endeavoring to bring in additional equity participants, it is my understanding that we have agreed to put off the expense and time involved in preparing and reviewing such documents, until such time as we are more certain about the structure of Kids Count as it goes forward with other strategic partners. Based thereon, it is my understanding that we all agree to enter into such documents in the future, while waiving any requirement of our existing Agreement that such documents be completed in the short run.

On a related topic, since the direct response TV campaign has not been generating income as quickly as had been hoped, the Terrys have been financing the Company's continued existence by purchasing its receivables. It is my understanding that all parties agree, notwithstanding any specific document assigning each new receivable, that <u>all</u> receivables now belong to the Terrys or Terry's Company as applicable, and as they are collected are to be turned over in partial satisfaction of the Terry's receivable purchases. In the event that, from time to time, the Terrys allow the Company to retain collected receivables, such retention shall not be deemed a waiver of any rights of the Terrys, but, in essence, a purchase by the Terrys of those receivables collected by the Company subsequent to the receivables which have already been purchased by the Terrys and/or assigned to them.

Mr. and Mrs. Gene Terry
Mr. and Mrs. Robert Aren
February 24, 1999 - Page 2.

If the above accurately sets forth our understanding and agreement, please so indicate by signing the acknowledgement at the bottom of this letter and returning the same to me in the self-addressed envelope enclosed herewith for your convenience.

Very truly yours,

Rollin J. Soskin

RJS/ml

## Acknowledgement

The above accurately sets forth our understanding and agreement and represents a valid modification to the Agreement dated November 22, 1998.

Dated: February _____, 1999

_____
Vicki Esralew

February _____, 1999

_____
Robert Aren

February _____, 1999

_____
Nicole Terry

February _____, 1999

_____
Eugene Terry

February _____, 1999

_____
Rollin J. Soskin

February _____, 1999

Kids Count Entertainment, Inc. and
Kids Count Entertainment, L.L.C.

By:_____
Vicki Esralew, as President and
as Manager, respectively

Law Offices Of
# Rollin J. Soskin & Associates

Rollin J. Soskin
Rachel A. Rupp

August 13, 2001

Ms. Vicki Esralew
Registered Agent, Kids Count Entertainment L.L.C.
1735 Country Club Drive
Long Grove, Illinois 60047

Re: Kids Count Entertainment, L.L.C.

Dear Ms. Esralew:

As a member of the above-captioned organization, I wish to examine the financial and organizational records. Please contact the undersigned immediately to schedule a mutually convenient time to review these documents within the next ten (10) days.

Very truly yours,

Rollin J. Soskin,

RJS:kbs

Aren/ArenEsra8-13-01



PLAINTIFF'S EXHIBIT

B

9933 Lawler Avenue • Suite 312 • Skokie, Illinois 60077-3706 • telephone (847) 329-9991 • facsimile (847) 329-9998
e-mail: RJSOSKINASSOC@AOL.COM    e-mail: RRUPPSOSKINASSOC@AOL.COM

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

**Debtor(s) (Last Name First) and address(es)**
KIDS COUNT ENTERTAINMENT
P.O. Box 5108
Buffalo Grove, IL 60089

**Secured Party(ies) and address(es)**
Eugene Terry and Terry's
Company, Inc.
450 Central Avenue
Highland Park, IL 60035

**For Filing Officer**
(Date, Time, Number, and Filing Office)

UCU101/25/99:06:9399:
20.00 CK01
SOSIL 10:57 3377622 FS

1. The financing statement covers the following types (or items) of property:

Accounts receivable, inventory, work in process,
equipment, supplier, furniture, fixtures, intel-
lectual property, intangibles, including but not
limited to patents trademarks and copyrights,
security deposits and all other assets, without
limitation.

**ASSIGNEE OF SECURED PARTY**

99025 476 0

2. ☐ Products of Collateral are also covered.

_____ Additional sheets presented.
_____ Filed with Office of Secretary of State of Illinois.
_____ Debtor is a transmitting utility as defined in UCC § 9-105.

Kids Count Entertainment, L.L.C.
and KIDS COUNT ENTERTAINMENT, INC.
By: _____ N A _____
Signature(s) of Debtor(s)   (Secured Party)
* Signature of Debtor Required in Most Cases;
Signature of Secured Party in Cases Covered by UCC § 9-402 (2)

(1) FILING OFFICER COPY-ALPHABETICAL

This form of financing statement is approved by the Illinois Secretary of State.

STANDARD FORM   UNIFORM COMMERCIAL CODE   FORM UCC-1—REV. 1984


PLAINTIFF'S
EXHIBIT
C