**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | Chapter 7 |
| | ) | |
| **VICKI E. ESRALEW**, | ) | No. 04 B 24393 |
| | ) | |
| Debtor. | ) | Judge A. Benjamin Goldgar |
| | ) | |
| **ROLLIN J. SOSKIN, EUGENE TERRY, NICOLE TERRY AND TERRY'S COMPANY, INC.**, | ) ) ) ) | |
| | ) | Adversary No. 04 A 3774 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **VICKI E. ESRALEW**, | ) | |
| Defendant. | ) | |

**NOTICE OF FILING**

TO:    SEE ATTACHED SERVICE LIST

   PLEASE TAKE NOTICE that on the 10th day of January 2006, Cohen & Krol filed Defendant Vicki E. Esralew's Memorandum In Support Of Defendant's Motion For Summary Judgment with the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn, Chicago, Illinois, a copy of which is hereby served upon you.

/s/ Linda M. Kujaca
Cohen & Krol
105 W. Madison St., Ste 1100
Chicago, IL 60602
312/368-0300

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

   Linda M. Kujaca, being first duly sworn on oath, deposes and states that she placed a copy of the foregoing Notice together with a copy of the Application attached thereto in a properly addressed, stamped and sealed envelope, directed to the persons shown on the attached Service List, and deposited same in the U. S. Mails at Chicago, Illinois, this 10th day of January 2006.

/s/ Linda M. Kujaca

## SERVICE LIST

Office of the U.S. Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

Thomas Crooks
Three First National Plaza
Suite 1950
Chicago, IL 60602

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF: | Chapter 7 |
| **VICKI E. ESRALEW**, | No. 04 B 24393 |
| Debtor. | Judge A. Benjamin Goldgar |
| **ROLLIN J. SOSKIN, EUGENE TERRY, NICOLE TERRY AND TERRY'S COMPANY, INC.**, | |
| | Adversary No. 04 A 3774 |
| Plaintiffs, | |
| v. | |
| **VICKI E. ESRALEW**, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE A. BENJAMIN GOLDGAR,
    BANKRUPTCY JUDGE

Vicki E. Esralew, Defendant and Debtor herein, by and through her attorneys, Gina B. Krol and Cohen & Krol, pursuant to Federal Rule of Civil Procedure 56, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7056, respectfully requests that this Court grant her Motion for Summary Judgment against Plaintiffs Rollin J. Soskin, Eugene Terry, Nicole Terry and Terry's Company, Inc. In support of her motion, she states and represents as follows:

**Background of Case**

In 1988, attorney Rollin Soskin (hereinafter referred to as "Soskin") began representing Debtor Vicki E. Esralew ("Esralew") and her husband Bob Aren ("Aren") in

estate planning matters. Soskin represented Esralew and Aren in a variety of matters including estate planning, business matters and personal legal matters.

Beginning in 1993, Ms. Esralew began making children's software. Kids Count Entertainment was formed to create and market Ms. Esralew's products. In October of 1998, Esralew and Aren told Soskin that they were looking to raise money for Kids Count to fund a direct sales television commercial and were looking for investors. Soskin recommended Eugene and Nicole Terry.

After extensive discussions, on November 22, 1998, Esralew and Aren executed a Memorandum of Agreement with Plaintiffs Rollin J. Soskin, Eugene Terry, Nicole Terry and Terry's Company, Inc. The Memorandum of Agreement provided that Eugene Terry, Nicole Terry and Terry's Company, Inc. would invest funds in Kids Count Entertainment, Inc. and Kids Count Entertainment, LLC (collectively, "Kids Count") to help finance the creation of commercials, purchase of air time and manufacture of required inventory. Soskin drafted the Memorandum of Agreement.

Pursuant to the terms of the Memorandum of Agreement, Eugene Terry, Nicole Terry and Terry's Company, Inc. loaned funds to Kids Count Entertainment, LLC, took a security interest in the inventory, receivables and other assets of Kids Count Entertainment, LLC and retained an option to purchase or convert the debt into up to ten (10%) percent of Kids Count Entertainment, LLC. The terms of the Memorandum of Agreement contemplated that Soskin would become a member of Kids Count Entertainment, LLC. By the terms of the Memorandum of Agreement, Soskin was to receive salary or legal fees not to exceed $4,000 per month, a two (2%) percent ownership interest in Kids Count and the option to purchase an additional eight (8%) percent of Kids Count Entertainment, LLC.

Soskin was Esralew and Aren's counsel during and after the drafting and execution of the Memorandum of Agreement. Neither Esralew nor Aren executed a separate written waiver of Soskin' conflict of interest. It was not until May of 1999 that Soskin formally suggested to Esralew and Aren in writing that they retain separate counsel.

In February of 1999, Kids Count was again low on funds. The Memorandum of Agreement was modified in part by a letter agreement dated February 24, 1999. Assets of Vickilew, Inc., which included the Kids Count assets, were transferred via an assignment for the benefit of creditors in March of 2004. Vicki Esralew filed her individual voluntary Chapter 7 bankruptcy petition on June 29, 2004. Rollin J. Soskin, Eugene Terry, Nicole Terry and Terry's Company, Inc. filed the instant adversary complaint against Ms. Esralew, seeking judgment and a finding that such judgment be held nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A), (a)(4) and (a)(6).

**Summary Judgment Standards**

Summary judgment motions are used to avoid unnecessary trials when there is no genuine issue of material fact in dispute. John Labatt Ltd. v. Messina, 2000 WL 311145 (Bankr.N.D.Ill.). Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure. Under such rule, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; Lujan v. National Wildlife Federation, 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). On a motion for summary judgment, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact

that requires a trial." In re Holstein, 321 B.R. 229, 234 (Bankr.N.D.Ill. 2005), *citing* Payne v. Pauley, 337 F.3d 767, 770 (7th Cir.2003).

In determining a motion for summary judgment, the court must view all permissible inferences in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is not an occasion for weighing evidence; rather the inquiry is limited to determining if there is a genuine issue for trial. John Labatt, Ltd. at 1 (internal citations and quotations omitted). Summary judgment is appropriate only if, taking the record as a whole, a reasonable jury could not possibly return a verdict in favor of the non-moving party. Matsushita; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

While a plaintiff need not prove its case in opposition to a motion for summary judgment, it is required to present some factual basis that would arguably entitle it to judgment in its favor. Lawrence and Allen v. Cambridge Human Resource Group, 685 N.E.2d 434, 439 (1997) (internal citations omitted). If a plaintiff fails to establish an element of its cause of action, summary judgment in favor of the defendant is proper. Id.

In this adversary case, Plaintiffs cannot show that the Memorandum of Agreement is a valid contract. The Debtor and her husband executed the Memorandum of Agreement without valid disclosures by their counsel regarding his conflicts of interest. Further, the Memorandum contains a restrictive covenant so broad that it violates public policy. As it is written and because of the conflicts of interest, the Memorandum is unenforceable. Plaintiffs seek to hold their damages (if any) resulting from the Debtor's breach of the Memorandum nondischargeable. As the Memorandum

itself is not enforceable, the Plaintiffs' complaint must fail.  Plaintiffs cannot show the Memorandum is enforceable and cannot show any factual basis which would entitle them to judgment in their favor.  As such, summary judgment in favor of the Debtor is warranted and proper.

**Conflict of Interest and Undue Influence**

The existence of an attorney-client relationship creates a fiduciary relationship as a matter of law.  In re Schuyler, 434 N.E.2d 1137, 1139 (1982).  Transactions between parties occupying fiduciary relations, such as attorneys and clients, are scrutinized with "jealous vigilance".  McFail v. Braden, 166 N.E.2d 46, 52 (1960).  When an attorney engages in a transaction with a client and is benefited thereby, a presumption arises that the transaction proceeded from undue influence.  Id.  Once such a presumption is raised, the burden shifts to the attorney to come forward with evidence that the transaction was fair, equitable and just and that the benefit did not proceed from undue influence.  Franciscan Sisters Health Care Corp., 448 N.E.2d 872, 876 (1983).  Courts require clear and convincing evidence to rebut a presumption of undue influence.  Id. at 878.

It is fundamental that an attorney may not represent conflicting interests without full disclosure and consent by all parties.  In re Diamond Mortgage Corp., 135 B.R. 78, 90 (N.D.Ill. 1990), *citing* ABA Model Code of Professional Responsibility DR 5-105 and ABA Model Rules of Professional Conduct Rule 1.7[1].  An actual conflict of interest has

---

[1]  Rule 1.7 of the Illinois Rules of Professional Conduct (which incorporates the ABA Model Rules) states:
    (a)    A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
        (1)    the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
        (2)    each client consents after disclosure.

been defined as "an active competition between two interests, in which one interest can only be served at the expense of the other." Id. (internal citations omitted). The Restatement (Second) of Contracts states that if a "fiduciary makes a contract with his beneficiary relating to matters within the scope of the fiduciary relation, the contract is voidable by the beneficiary, unless (a) it is on fair terms, and (b) all parties beneficially interested manifest assent with full understanding of their legal rights and of all relevant facts that the fiduciary knows or should know." Restatement (Second) of Contracts, Section 173 (1979). Additionally, Rule 1.8 of the Illinois Rules of Professional Responsibility states, in part:

> (a) Unless the client has consented after disclosure, a lawyer shall not enter a business transaction with the client if:
> (1) the lawyer knows or reasonably should know that the lawyer and the client have or may have conflicting interests therein; or
> (2) the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client.

A contract can be voided where its execution was obtained through illegality, mistake, fraud or duress. In re Pre-Press Graphics Co., 310 B.R. 905, 917 (N.D.Ill. 2004). Economic duress includes the oppression, undue influence, imposition or taking of undue advantage of the business or financial stress or extreme weakness or necessities of another, such that free agency is overcome. Id. Illinois courts use a three-prong test for economic duress: 1) a wrongful act of another; 2) one side is

---

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after disclosure.
(c) When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.

coercively induced to made a contract; and 3) under circumstances which deprive him of the exercise of free choice.  In re Dalip, 194 B.R. 597, 602 (N.D.Ill.1996) (internal citations omitted).  In cases where agreements have been invalidated because of duress, the conduct of the party obtaining the advantage is tainted with some degree of fraud or wrongdoing.  Id. at 602.  Wrongful acts can also include those that are wrongful in a moral sense.  Id. at 601.  In Illinois, a contract executed under duress is voidable.  Id.

In this case, Esralew and Aren were not notified in writing of Soskin's likely conflict of interest prior to their execution of the Memorandum of Agreement.  They were not given, pursuant to Rule 1.7(c) of the Illinois Rules of Professional Conduct, a disclosure explaining the implications of common representation and the risks involved.  It was not until May of 1999 that Soskin sent correspondence to Esralew and Aren suggesting that his interests were different from theirs and that they should retain separate counsel.  Soskin seeks in the May 5, 1999 letter to formalize and memorialize a conversation he had with Aren (presumably the week before the date of the letter) wherein they discussed Aren's question to Soskin whether he and Esralew should retain separate counsel.  Soskin stated in his correspondence,

> The way things appear at this time, your interests may now be significantly different from the interests of the Terry's [sic] and from my interests, and therefore you should have separate advisors.  You have advised me today that I should expect to hear from attorney Peter Weil who will act as your attorney, and that I am free to disclose any and all information to him to bring him up to date.
>
> A copy of Rollin Soskin's May 5, 1999 correspondence to Vicki Esralew and Bob Aren is attached to the Defendant's Local Rule 7056-1 Statement of Facts as Exhibit H.

As is evident from this correspondence, it was never made clear to Esralew or Aren that their interests were best protected by retaining counsel prior to the execution of the Memorandum of Agreement, nor was it made clear at any earlier date that their interests were 'significantly different' from that of Soskin.

While Kids Count never became the lucrative business venture that the parties hoped, all parties stood to benefit financially.  If Kids Count had become a viable business, Soskin's ownership interest could have been quite valuable.  In this case, Soskin was in a unique position of authority to exert undue influence upon Esralew and Aren.  As their counsel, he held a fiduciary position.  It was he who they trusted regarding the legal ramifications of the Memorandum of Agreement.  Indeed, it was Soskin who drafted the Memorandum.  By taking a financial interest in Kids Count and the transactions with the Terrys, Soskin used his fiduciary relationship to his benefit and to the detriment of Aren and Esralew.  As made clear by the May 1999 letter, Soskin failed to properly and adequately set forth to Aren and Esralew, <u>in writing</u>, that he held conflicting interest and should not have been their individual counsel.  Such an undisclosed conflict of interest was tantamount to and constituted the wielding of undue influence upon Aren and Esralew.  Such an undisclosed conflict of interest should render the Memorandum of Agreement void.

**<u>Restrictive Covenant</u>**

Restrictive covenants and noncompetition agreements are evaluated differently depending upon whether they derive from an employment relationship or are ancillary to the sale of a business.  <u>Health Professionals v. Johnson</u>, 791 N.E.2d 1179, 1189 (2003).  Courts impose a less stringent test of reasonableness on covenants ancillary to the sale of a business than on those in employment contracts because of the difference

in the nature of the interests protected. Id. As the Memorandum of Agreement's restrictive covenant dealt with the work product of the Debtor, it is far more akin to an employment agreement than the sale of a business.

The question of whether a restrictive covenant is enforceable or not is a question of law. Lawrence and Allen at 440. Before determining the reasonableness of a restrictive covenant, the court must make two determinations. First, the court must find that the restrictive covenant is ancillary to a valid contract and subordinate to the contract's main purpose; secondly, the court must determine whether there is adequate consideration to support the restrictive covenant. Id. A restrictive covenant in an employment contract is enforceable if the terms of the agreement are reasonable and necessary to protect a legitimate business interest of an employer. Id. at 441; Francorp v. Siebert, 126 F.Supp.2d 543, 545 (2000). Such covenants are evaluated on a case-by-case basis and are deemed enforceable or unenforceable based on the reasonableness of their terms. Health Professionals at 1188.

A restrictive covenant's reasonableness is measured by its hardship to the employee, its effect upon the general public, and the reasonableness of the time, territory and activity restrictions. Lawrence and Allen at 441. A lack of a geographic limitation in a restrictive covenant can be unreasonable. Id. Similarly, a restrictive covenant's activity restrictions should be narrowly tailored to protect only against activities that threaten the employer's interest. Id. Denying a person the opportunity to work is a restraint on trade that is abhorred by the courts. Sheehy v. Sheehy, 702 N.E.2d 200, 208 (1998) (internal citations omitted). Courts have found that where an agreement is ambiguous, subjecting an employee to uncertainty offends public policy. *See, i.e.*, Power Dist. Inc. v. Emergency Power Engineering, 569 F.Supp. 54, 58

(D.C.Va.1983) ("The fact that its reach is so difficult to determine and may so easily exceed in effect the permissible reach renders the covenant overbroad"). In terms of duration, courts have generally upheld noncompetition agreement terms lasting three to five years. Health Professionals at 1193 (citing cases). An unreasonable covenant not to compete is of no effect, and its scope cannot be judicially reformed in order to make it enforceable. Presto-X-Company v. Beller, 568 N.W.2d 235, 241 (Neb.1997).

The Memorandum of Agreement, while ostensibly setting forth the terms and conditions of the Plaintiffs lending funds for the benefit of Kids Count, also contains a clause restricting the Defendant's actions in terms of her employment and association with Kids Count. Paragraph 18 of the Memorandum of Agreement reads as follows: "Absent subsequent agreement to the contrary, Vicki Esralew agrees that all of her personal services, appearances, creative efforts, activities and products shall be performed and or [sic] created for the exclusive benefit of Kids Count."

In this case, the restrictive covenant upon the Defendant has absolutely no limitations of any sort. There is no limit to the time, territory, scope or duties on the Debtor's personal services, creative efforts, activities, appearances and products. An argument could be made that if the Defendant were to work on her children's school projects, such creative efforts would be for the exclusive benefit of Kids Count. Were the Debtor to host a dinner party ten years from now, her creative efforts and products (i.e., food and beverages) created therefor would, by the terms of this covenant, inure to the exclusive benefit of Kids Count. While these examples are, of course, ridiculous, they illustrate the completely and unreasonably broad nature of the restrictive covenant and the consequences which are uncontemplated.

Rollin Soskin illustrated in his deposition the unlimited restriction in regard to the personal services in the restrictive covenant:

> Q. Define personal services as contemplated by that agreement.
> A. All of her business activities for compensation.
> Q. Well, what do you mean by "business activities"?
> A. […] All of [Vicki Esralew's] personal services would mean anything she could be compensated for or anything that would be deemed a business activity. She couldn't go work somewhere else.
> […]
> Q. If Vicki Esralew took a job as a waitress, would serving food constitute personal services?
> A. Yes.
>
> Deposition of Rollin Soskin, November 10, 2005, pages 82-83

The restrictive covenant contained in the Memorandum of Agreement is unduly restrictive upon the Debtor. Being completely unrestricted in time, place or activities, the restrictive covenant in the Memorandum of Agreement is unreasonably broad, in violation of public policy and void.

## Conclusion

Plaintiffs seek to hold damages resulting from the Debtor's breach of the Memorandum nondischargeable. The Memorandum of Agreement cannot be upheld as a valid enforceable agreement. The Memorandum was executed by the Debtor while working with an attorney who had a conflict of interest. Further, the Memorandum contains a restrict covenant so broad as to violate public policy. As the Memorandum itself is not enforceable, the Plaintiffs' complaint must fail. Plaintiffs cannot show any factual basis which would entitle them to judgment in their favor. There are no genuine issues of material fact in this matter which preclude the entry of summary judgment in favor of the Defendant. Defendant is entitled to a judgment as a matter of law.

WHEREFORE, Vicki E. Esralew, Defendant and Debtor herein, by and through her attorneys, Gina B. Krol and Cohen & Krol, respectfully requests that this Court enter an order granting the Defendant's Motion for Summary Judgment; and for such other and further relief as the Court shall deem proper.

Gina B. Krol  
Joseph E. Cohen  
Linda M. Kujaca  
Cohen & Krol  
105 W. Madison St., Ste 1100  
Chicago, IL 60602  
312/368-0300

Vicki E. Esralew,

BY:  /s/ Linda M. Kujaca  
One of her Attorneys