IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| | ) | Case No. 04-B-24393 |
| VICKI E. ESRALEW | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| ROLLIN J. SOSKIN, EUGENE | ) | |
| TERRY, NICOLE TERRY and | ) | |
| TERRY'S COMPANY, INC. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding |
| | ) | No. 04 A 3774 |
| | ) | |
| VICKI E. ESRALEW, | ) | Judge Goldgar |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

NOW COME the Plaintiffs, Rollin J. Soskin, Eugene Terry, Nicole Terry and Terry's Company, by and through their attorney, Thomas C. Crooks, and respond to Defendant's Motion for Summary Judgment state as follows:

**Introduction**

Plaintiffs have filed a three count adversary complaint alleging fraud on the part of the Debtor, Vicki Esralew, arising from a business transaction wherein the plaintiffs provided capital and services in exchange for a small percantage ownership in Esralew's business. Esralew has filed her Motion for Summary Judgment. Esralew has not challenged plaintiffs' evidence of fraud, but, rather, bases her claim for judgment on two legal arguments. First, Esralew argues that the parties' Memorandum of Agreement is void based on an alleged conflict of interest

and/or undue influence.  Second, Esralew arues that the agreement is void because of an illegal resrtictive covenant.  Esralew is wrong on both counts and her motion should be denied.

**Facts**

The debtor, Vicki Esralew, is an experienced businesswoman having worked as an account executive for WGN and having founded and run a series of corporations and other business entities.  Esralew used one of the plaintiffs, Rollin Soskin, as an attorney from time to time during the period 1988 to 1993.  After nearly five years of no contact between Esralew and Soskin, they ran into each other in the summer of 1998.  This chance meeting led to some additional estate planning work done for Esralew and her husband by Soskin and led to conversations regarding Esralew's need for some management expertise and capital for her business, Kids Count Entertainment LLC.

Esralew was looking for money and help in running the business and, at her request, Soskin sought out and found investors, Gene and Nicole Terry.  The parties entered into a series of discussions which culminated in the signing of a Memorandum of Agreement in which it was agreed that the Terrys would loan between $200,000 and $250,000 to Kids Count, "as cash flow required" and that Soskin, a CPA as well as an attorney, would provide services of a legal and business nature to help in the running of the business.

The Terrys had the right to convert their loan to a purchase of up to ten percent of the company.  Soskin received two percent of the company for bringing the parties together and for providing assistance with the company's management and legal affairs.  He also was to receive an option to *purchase* another eight percent of the company for $200,000.

The agreement was reached after a series of meetings happening over a few short weeks in November of 1998.  Esralew needed money quickly, she claimed, to prepare a television commercial to sell the products so that she could take advantage of the Christmas sales season.

The commercial did not get on television in time for the Christmas sales season and, as a result, the sales were nowhere near what was projected by Esralew.  Nevertheless, the plaintiffs, and they believed Esralew as well, were ready to go forward with the business in hopes of building it.

By the spring of 1999 the relationship of the parties had deteriorated.  Esralew stopped communicating with the plaintiffs.  Esralew stopped meeting with the plaintiffs regularly as required under the agreement.  Only later did plaintiffs learn that during the negotiations with plaintiffs, immnediately upon signing the agreement and continuing thereafter Esralew had been "double dealing" the plaintiffs, seeking other investors with which to replace them, withholding information from them and outright lying.  The evidence shows that Esralew knew at the time she entered into the Memorandum of Agreement that it was too late to produce a television commercial to take advantage of the Christmas sales season.  The evidence shows that the prospectus Esralew provided to the plaintiffs was filled with false and exaggerated statements regarding the condition of the company.  Additionally, after the parties had parted ways, plaintiffs learned that what had happened to them was part of a pattern of Esralew taking money from people and then reneging on her part of the bargain.

**Argument**

**I.      Legal Standard for Summary Judgment.**

When ruling on a motion for summary judgment the court must resolve all factual disputes and draw all reasonable inferences in favor of the party opposing the motion. *Holland v. Jefferson National Life Insurance Co.*, 883 F.2d 1307 (7th Cir. 1989); *Tolentino v. Friedman*, 46 F.3d 645, 649 (7th Cir. 1995), *cert. denied*, 115 S. Ct. 2613 (1995). Summary judgment is then appropriate only if the evidentiary materials before the court demonstrate there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

In reviewing the evidence this court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000). In *Reeves* the Supreme Court emphasized that on summary judgment the court must review the record in its entirety and give credence to evidence favoring the non-moving party. However, the court should only give weight to evidence supplied by the moving party if such evidence is uncontradicted and comes from disinterested parties:

> Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the non-movement as well as that evidence supporting the moving party that is uncontradicted and un-impeached, at least to the extent that the evidence comes from disinterested witnesses.

*Reeves,* 120 S.Ct. 2097, 2110 (2000)(citation end quotations omitted).

As to each and every fact dispute in this case, and there are many, Esralew is dependent upon her own testiomony and that of her husband, Robert Aren. They are clearly not disinterested witnesses. For purposes of summary judgment their testimony must be disregarded.

The law of the state in which the debtor resides is controlling in bankruptcy matters. *Small v. Beverly Bank*, 936 F.2d 945, 947 (7th Circuit, 1991) ("the law (including the choice of law rules) of a jurisdiction in which the debtor is located governs the perfection and effect of perfection or non-perfection of a security interest."). See also *Supporters to Oppose Pollution, Inc. v. The Heritage Group*, 973 F.2d 1320 (7th Circuit, 1992); *In re Michael J. Krueger*, 192 F.3d 733 (7th Circuit, 1999). Therefore, Illinois substantive law should be applied here.

II.    **The Agreement Cannot be Voided Based on an Alleged Conflict of Interest or Alleged Undue Influence.**

A.    **Esralew waived any potential conflict of interest and was not subjected to undue influence.**

Soskin, a licensed attorney, from time to time did legal work for Esralew and her husband prior to entring into a business transaction with them. From this fact Esralew has argued that the agreement is, therefore, based upon conflict of interest and undue influence on the part of Soskin.

In *McFail v. Braden,* 19 Ill.2d 108, 166 N.E.2d 46 (1960), cited by Esralew, the court addressed a transaction involving the sale of land between an attorney and his client. While acknowledging that the attorney bore the burden of showing the fairness of the transaction, the court was very clear that "…an attorney is not prohibited from dealing with his client or buying his property, and such contracts, if open, fair and honest, when deliberately made, are as valid as contracts between other parties." *McFail,* 19 Ill.2d at 117.

Important factors in determining whether a transaction between an attorney and his client is fair, and thus enforceable, are (1) whether there was full and frank disclosure of any potential conflict of interest; (2) whether the attorney provided adequate consideration; and (3) whether the

client received independent advice before entering into the agreement. *McFail v. Bradden*, 19 Ill

2d 108, 166 NE 2d 46 (1960); *Klaskin v. Klepak*, 126 Ill 2d 376, 534 NE 2d 971 (1989).

In weighing the above factors, the trier of fact should also consider the level of

sophistication of the defendants in entering into a transaction like the one before this court and to

what extent the plaintiff was in a position, because of his relationship to the defendants, to exert

undue influence. *Klaskin v. Klepak*, *supra*, 126 Ill. 2d at 390-391, 534 N.E.2d at 977.

While Esralew is correct that a transaction between an attorney and his client raises a

presumption of undue influence, "once evidence is introduced contrary to the presumption, the

bubble bursts and the presumption vanishes." *Franciscan Sisters Health Care Corporation,* 95

Ill.2d at 462. For purposes of summary judgment, plaintiffs need only come forward with

sufficient evidence from which a finder of fact, when drawing all inferences in favor of the

plaintiffs, could reasonably conclude there was no undue influence.

The evidence shows that there was a full disclosure of the potential of a conflict of

interest before Esralew entered into the Memorandum of Agreement. Eralew understood the

concept of a conflict of interest on the part of an attorney because she had been in just such a

situation before. (Fact ¶ 4). When the issue of a possible conflict arose, the parties to the

agreement met in order to discuss the possibility of conflict. Esralew was told that she had to

seek separate counsel and she said she would. (Fact ¶18). Esralew had used a number of

attorneys in her personal and business dealings in the past. In fact, she had used the services of

two separate lawyers earlier that same year. (Fact ¶ 18). After the fact, Esralew and Aren both

acknowledged that they had sought outside counsel to review the agreement. (Fact ¶ 20). There

can be little doubt that Esralew consulted with independent counsel, because she proposed

changes to the first draft of the agreement, changes to her benefit, which a layman is not likely to have proposed. (Fact ¶¶ 21-23).

The agreement itself contained a provision in which plaintiff was informed in writing about the potential conflict and she waived any such conflict. See Memorandum of Agreement, paragraph 11. By executing the agreement Esralew acknowledged that she "…has engaged such attorneys, accountants, or other professionals as they have determined intheior own discretion to be necessary…hereby waive[s] any actual or apparent conflict of interest resulting from the participation of Soskin…"

It is also important that Esralew is a sophisticated business woman. After working for WGN as an account executive Esralew started and operated her own advertising agency from 1989 to 1993 when she began the business which is the basis of this case. (Fact ¶¶ 1-2). Esralew has entered into a series of business deals involving finance of her various business entities. (Fact ¶¶ 3-8). Clearly a fact finder could reasonably conclude that she is a sophisticated business person despite her claims to the contrary.

The most important criteria to be considered is whether or not the agreement was fair. The agreement gave the Terrys the option to convert their loan (200 to 250,000) into a ten percent ownership interest. It gave Soskin the right to *purchase* an 8% interest in the company (along with the 2% Soskin received for bringing the parties together and providing legal/business services of up to 60 hours per month for six months).[1] The option that the parties received were really of no value unless the value of the company rose to above two million dollars.

---

[1] At Soskin's then current hourly rate of $200/hour, 60 hours would come to $12,000 in fees, $8,000 greater than Soskin was to be paid *if cash flow allowed.* Soskin was, therefore, committed to provide $48,000 in free legal services for a 2% interest in Kids Count. The value of Kids Count would have to rise to 2.5 million dollars for this to be beneficial to Sokin.

7

If the financial investment and sweat equity provided by the plaintiffs resulted in the hoped-for increase in sales, thus increasing the value of the company, after options were exercised, Esralew would be left with over 75% of a company which had substantial value. This is far better for her than being the sole owner of a business which had few sales and little value. The plaintiffs were gambling their money and time in hopes of being rewarded if they successfully built the business. If the gamble lost, Esralew was in no worse position than before entering into the Memorandum of Agreement. If the gamble succeeded, the increased value in the company would more than compensate Esralew for her lesser ownership interest.

Esralew raises the defense of economic duress. Economic duress is an affirmative defense for which Esralew bears the burden of persuasion. *In Re: Pre-Press Graphics Company, Inc.*, 310 B.R. 905, 916 (2004).

Economic duress involves taking "undue advantage of the business or financial stress or extreme weakness or necessities of another, such that his 'free agency is overcome.'" *Id.*, 310 B.R. at 916-17, quoting *Ficke v. Johns,* 1996 U.S. Dist. LEXIS 2566, 1996 WL 99424, at *4 (N.D.Ill. Mar. 4, 1996). To maintain this defense Esralew must show that Soskin's actions were so extreme that he caused Esralew to be "bereft of the quality of mind essential to the making of a contract." *Alexander v. Standard Oil Co.,* 97 Ill.App.3d 809, 814-15 (5th Dist. 1981). "Duress occurs where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of one's own free will." *Krilich v. American National Bank,* 334 Ill.App.3d 563, 572, 778 N.E.2d 1153, 1162 (2d Dist. 2002).

Esralew has presented no evidence of "threats" or other wrongful, coercive acts. Esralew has presented no evidence that her economic position was so poor that she was without the "free

will" to enter into a contract.  And even if she had, "[t]he mere stress of business conditions will not constitute duress where the [opposing party] was not responsible for the conditions." *Selmer v. Blakeeslee-Midwest Co*., 704 F.2d 924, 928 (7th Cir. 1983).  Esralew has not presented a factual basis for her claim of economic duress.  Because she bears the burden of proof, this argument must be rejected.

Esralew makes much of Soskin's May 5, 1990 letter in which he advises Esralew and Aren that they should get separate counsel to address the apparent break up about to take place between the parties. The advice here relates to Esralew getting a separate attorney for reasons unrelated to enring into the original agreement.  This has nothing to do with procuring separate counsel with regard to entering into the Memorandum of Agreement.

It is important to note Esralew's claim of conflict of interest and undue influences is based upon Soskin's status as her former lawyer.  What about the Terrys?  There is no allegation that they were operating under a conflict of interest.  All they did was loan much needed money to Esralew—money that was never paid back.  Esralew's arguments of conflict of interest and undue influence simply do not apply to them.

**B.    Having received the benefit of her bargain Esralew cannot now void the agreement.**

It is an established principle that a party may not receive the benefit of an agreement and then seek to have the court excuse them from performing on the basis that the agreement is void. In *Partee v Compton*, 273 Ill. App. 3d 721, 653 NE 2d 454 (5th Dist. 1995) the attorney plaintiff filed a breach of contract action to enforce a retainer agreement regarding representation on a

9

personal injury case.  The defendant-client, like the defendant here, countered by arguing that the agreement violated the code of professional conduct and, therefore, the agreement was void.

The court, while acknowledging that the agreement at issue had violated the code, nevertheless, ruled for the plaintiff attorney.  The court reasoned that the defendant, having received the benefit of his bargain, could not at that point, be excused from performing.  The same principle applies here.  Esralew received the benefit of hundreds of thousands of dollars provided by the Terrys.  Not only was this cash infusion arranged by the Soskin, but Soskin also contributed hundreds of hours of free labor to defendants, providing legal and non-legal services, without compensation.  Having received and accepted the benefit, Esralewnow seek to declare the agreement void.

It is a well established principle that a party may not seek equity if they come to the court with unclean hands. Defendants are asking this court to declare the Memorandum of Agreement to be void.  This is unquestionably equitable relief. *Ransburg v. Haase*, 224 Ill.App. 3d 681, 686-87, 586 N.E.2d 1295, 1299 (3d Dist. 1992).  "Equitable relief may be denied if the applicant is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought, provided that it is in connection with the transaction under consideration."  *Metcalf v. Altenritter*, 53 Ill App 3d, 904, 908, 369 NE 2d, 498, 501 (5th Dist. 1977).

A review of  plaintiffs' statement of facts demonstrates that Esralew was double dealing the plaintiffs as soon as the ink was dry on their agreement, by witholding information and directing others to withold information and lie to plaintiffs. (Fact ¶¶ 31-39).  Esralew induced the plaintiffs into the Memorandum of Agreement with the claim that the money would be used to make a TV commercial which would result in significant sales, but Esralew knew that it was too late to make a commercial in time to take advantage of the Christmas sales season. (Fact ¶¶ 27,

35; see ¶13 of Memorandum of Agreement).   Esralew induced plaintiffs to enter into the agreement with a prospectus which contained numerous positive statements about Kids Count which Esralew now admits were untrue. (Fact ¶¶ 42-46).

Given the bad faith which Esralew has shown in this transaction. Her hands are unclean and she should be denied the equitable relief she seeks.

## III.    The Agreement Does Not Place an Unreasonable Restrictive Covenant on Esralew.

Esralew's last argument is that the Memorandum of Agreement contains what defendant terms a "restrictive covenant."   Defendant argues that a clause in the parties' agreement unreasonably restricts Esralew's business activities and, therefore, voids the entire agreement.[2] In support of this argument defendant cites several Illinois cases.   However, all the cases deal with employment relationships where employees had agreed to limitations on their abilities to compete with their employers *after* their employment ceased.   None of the cited cases address the facts here.

At the outset of her argument Esralew acknowledges that the cases she cites do not fit her facts.   Esralew points out that "[r]estrictive covenants and noncompetition agreements are evaluated differently depending upon whether they derive from an employment relationship or are ancillary to the sale of a business," citing *Health Professionals v. Johnson,* 791 N.E.2d 1179, 1189 (3d Dist. 2003).   Esralew then goes on to argue that "[a]s the Memorandum of Agreement's restrictive covenant dealt with the work product of the Debtor, it is far more akin to an employment Agreement than the sale of a business."   The problem for Esralew is that the restrictions here do not derive from an employment relationship or the sale of a business.   The

---

[2] Plaintiffs' unclean hands argument, *supra*, also applies to this defense.

restrictions on her are no more than what the law requires when a party has a fiduciary obligation to a business entity that a person owns and controls.

Defendant is correct that Illinois places limitations on restrictive covenants which restrict the ability of *former employees* to work in their area of competence in competition with their former employer. However, the situation in this case is quite different from the employer/employee relationships discussed in Esralew's cases. In the Memorandum Esralew agreed that "...all of her personal services, appearances, creative efforts, activities and products shall be performed and or created for the exclusive benefit of Kids Count," a company in which Esralew was the majority owner.

The primary difference between the restrictions in this case and those cases cited by the defendants is that Esralew is free to earn a living by applying her creative talents to the L.L.C. which she has voluntarily created for the purpose of economically exploiting her creative talents. In each case cited by the defendant the party which is the subject of the restrictive covenant is restricted in such a way that he is effectively prevented from earning a living.

In analyzing a restrictive covenant Illinois courts examine several factors, including "hardship to the employee [and] its effect upon the public..." *Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 138, 685 N.E.2d 434, 441, 226 Ill. Dec. 331, 337 (2nd Dist. 1997). In the cases cited by Esralew the hardship on the employee and the general public was significant because the covenant prevented the employee from working in his chosen field and prevented the public from receiving the services of the employee at issue. In this case Esralew, despite the clause she complains of, was free to earn a living through the business entity she created, owned and ran. The public was denied nothing because Esralew was free to pursue her creative ideas within the company she owned and controlled.

When Soskin entered into the Memorandum of Agreement, along with the new investors, Eugene Terry, Nicole Terry and Terry's Company, much needed energy and capital was brought to Esralew's business.  Plaintiffs invested their time and money in the L.L.C. because of the creative talents and abilities of Esralew.  The prospectus supplied by Esralew made it clear that her unique talents and abilities were the primary asset of Kids Count. (Fact ¶ 41).  As a result, the parties agreed that Esralew, the individual whose creative talents were the basis of the business, would direct her creative talents and abilities solely to this L.L.C.  Plaintiffs would have been foolish to put time and money into an LLC whose mission was to create children's products conceived by Esralew, if Esralew could turn around, form a new business entity, and create those products solely for her own profit.  The plaintiffs would then have invested time and money in a business which would instantly become an empty shell, with no chance of success.

The restrictions in question do little more than put into writing what the law already requires.  As partners in the same venture, the parties in this case owe a fiduciary duty to each other.   Under the corporate opportunity doctrine, each of the parties to this litigation are precluded "from taking advantage of business opportunities belonging to the corporation." *Dremco, Inc. v. South Chapel Hills Gardens, Inc.*, 274 Ill. App.3d 534, 538, 654 N.E.2d 501, 504-05, 211 Ill. Dec. 39, 42-43 (1st Dist. 1995).  The *Dremco* court applied this rule to a joint venture between two corporations.  There is no reason this principle would not apply to a limited liability company.  Vicki Esralew, whose creative talents are the basis of the business, has a fiduciary duty to use those talents in the venture she has entered into, rather than redirecting them to another business entity.  The clause which prevents her from redirecting them to another entity does not violate public policy.

13

Even if the clause were to be unenforceable, it would not void the entire agreement. The provisions granting Soskin his interest in the company and his right to an accounting are completely independent from the clause limiting Esralew's activities. Under these circumstances, if the restrictions on Esralew are found to be unenforceable (a determination that need not be made at this time) the remainder of the agreement should stand. *Arpac Corporation v. Murray,* 226 Ill. App. 3d 65, 589 n.e.2d 640, 168 Ill. dec. 240 (1st Dist. 1992)(portion of restrictive covenant found to be against public policy while other portions upheld and enforced); *Streck v. Streck,* 35 Ill. App. 2d 473, 481, 183 N.E.2d 26, 31 (4th Dist. 1962) ("To destroy the entire agreement because of this one clause would make the law a technical monster.").

In *Lindenhurst Drugs, Inc. v. Becker*, 154 Ill.App. 3d 161, 506 NE 2d 645, 106 Ill. Dec. 845 (2nd Dist. 1987), defendant Becker, while a shareholder, director and officer of Lindenhurst Drugs, purchased a Ben Franklin store, which he used to compete with the plaintiff. At trial the court found for the plaintiff on its claims for breach of fiduciary duty and usurpation of corporate opportunity. On Appeal, the trial court's decision was affirmed.

In *Unichem Corp. v. Gurtler* 148 Ill.App. 3d 284, 498 NE 2d 724, 101 Ill. Dec. 400 (1st Dist. 1986) defendant Gurtler was the President of Unichem and a member of the board of directors. When Gurtler helped his son set up a competing business, even resigning from Unichem and joining the new venture as President once it was established, Unichem filed suit alleging that Gurtler breached his fiduciary duty to Unichem. At trial, the court agreed and order an accounting of the new company and, following a series of hearings, awarded plaintiff an amount equal to the net profit earned by the new company. On appeal the trial court was affirmed, with the court specifically approving the ordering of an accounting in order to calculate damages.

The requirement that Esralew use her creative abilities within the business entity she created for that purpose puts no undue burden on her.  It merely prevents her from cheating minority owners of her business.

Eralew makes much of Soskin's testimony concerning what activities would be violative of the requirement that Esralew provide her creative services exclusively to her own company.  This tesimony is of no value to Esralew.  It is not for Soskin to make this determination, but the court's.  It is simply not unreasonable for Esralew to agree that "all of her personal services, appearances, creative efforts, activities and products shall be performed and or created for the exclusive benefit of Kids Count" when Kids Count is the company she founded and owns.

**Conclusion**

The two arguments presented by Esralew if not erroneous as a matter of law are, at the least, dependent upon factual determinations.  Factual disputes arise as to whether Esralew consulted an independent attorney before entering into the agreement and whether Esralew defrauded the plaintiffs while inducing them to enter into the Memorandum of Agreement, and thereafter.  Due to these and other factual disputes, and for all the reasons stated, Esralew's Motion for Summary Judgment should be denied.

/s/ Thomas C. Crooks_____
Thomas C. Crooks, Attorney for Plaintiffs

Thomas C. Crooks
Attorney for Plaintiff
ARDC #00547336
Three First National Plaza, Suite 1950
Chicago, IL 60602-4205
Office (312) 641-2260
Facsimile (312) 641-5220

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| | ) | Case No. 04-B-24393 |
| VICKI E. ESRALEW | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| ROLLIN J. SOSKIN, EUGENE | ) | |
| TERRY, NICOLE TERRY and | ) | |
| TERRY'S COMPANY, INC. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding |
| | ) | No. 04 A 3774 |
| | ) | |
| VICKI E. ESRALEW, | ) | Judge Goldgar |
| Defendant. | ) | |

## NOTICE OF FILING

TO:    Cohen & Krol                          Office of the U.S. Trustee
       105 W. Madison Street, Suite 1100     227 W. Monroe Street, Suite 3350
       Chicago, IL 60606                     Chicago, IL 60606

PLEASE TAKE NOTICE that on February 21, 2006, Thomas C. Crooks electronically filed Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment with the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn Street, Chicago, Illinois, a copy of which is hereby served upon you.

/s/ Thomas C. Crooks
Thomas C. Crooks
Attorney for the Plaintiffs

Thomas C. Crooks
ARDC #00547336
Three First National Plaza, Suite 1950
Chicago, IL 60602-4298
Office (312) 641-2260
Facsimile (312) 641-5220

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2006 I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Notice of Filing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Cohen & Krol                                Office of the U.S. Trustee
105 W. Madison Street, Suite 1100           227 W. Monroe Street, Suite 3350
Chicago, IL 60606                           Chicago, IL 60606


/s/ Thomas C. Crooks
Thomas C. Crooks
Attorney for the Plaintiffs