VICKI ESRALEW
P.O. BOX 5108
BUFFALO GROVE, IL 60089

NOVEMBER 15, 2000

Eugene and Nicole Terry
1891 Old Briar Rd.
Highland Park, IL 60035

RE: PROPOSED LICENSE AGREEMENT B/N KIDS COUNT ENTERTAINMENT, LLC AND NEWCO.

Dear Gene and Nicole:

As you probably know, the last eighteen months has been frustrating as Kids Count Entertainment L.L.C. ("Kids Count") has barely maintained itself while you as a creditor have been patient and understanding of the lack of Kids Count resources to satisfy indebtedness owing to you.

I have come to the understanding that the best way to revitalize the Kids Count products and undertake a concerted financing effort, is to provide an opportunity to Kids Count debt holders to receive what they are owed by paying them royalties from the licensing of existing Kids Count products to a new corporate entity, tentatively identified as Newco, L.L.C. ("Newco"). Let me assure you the formation of Newco is not intended to obviate Kids Count's financial obligations to its debt holders, but rather is structured to allow Kids Count debt holders the prospect of being made whole as recipients of royalty payments from Newco through the licensing of Kids Count products.

As you may be aware, the Kids Count product line needs to be significantly updated and revitalized in order to sell successfully in the current marketplace. The financing being contemplated will allow Newco to fix the existing Kids Count products. Before Newco endeavors to license Kids Count products and present an opportunity to satisfy Kids Count indebtedness to you, however, I wanted to advise you of this proposed method to satisfy said indebtedness. In this regard, enclosed is the license agreement between Kids Count and Newco.

Under the terms of the proposed license agreement, Newco will pay Kids Count a royalty equal to twenty five percent (25%) of the gross sales receipts from the sale of existing Kids Count products. Newco will also pay Kids Count Fifty Percent (50%) of the gross sales receipts from the sale of Kids Count current inventory of products.

Ninety-Five Percent (95%) of the royalty payments received by Kids Count shall be distributed to the debt holders quarterly based on their pro rata portion of the outstanding Kids Count debt as of November 15, 2000. The remaining Five Percent (5%) from the royalty payments shall be used to cover the cost in administering the license agreement on behalf of Kids Count, including preparation of tax returns, quarterly statements and distributions, maintaining checkbook, etc....


EXHIBIT 5

C2872

Kids Count will provide you with a promissory note equal to the outstanding principal and interest owed to you as of November 15, 2000. The note shall be for three (3) years and may be renewed for an additional three (3) years, so long as Newco renews the proposed license agreement.

I respectfully request you review this proposal and return a signed copy of this letter acknowledging your acceptance and agreement to be repaid through the proposed license agreement. Your acceptance is required no later than November 20, 2000. In the interest of time, please fax your signed letter to (312) 704-4500 attn: Jack Garrity and return the original copy by mail to Jack Garrity 55 W. Wacker Drive Suite 1000 Chicago, IL 60601. Additionally, please confirm the indebtedness outstanding and owing to you as of November 15, 2000. If we have not received your consent on or before November 20, 2000, we will understand that you have not consented to the proposal and will proceed accordingly.

Thank you for your prompt attention, assistance and consideration of this proposal.

Sincerely,

Vicki Estrada

Consent to accept repayment of outstanding debt through royalties derived from Proposed License agreement between Kids Count Entertainment LLC and Newco.

By: _____

Name: _____

Date: _____

Amount of debt owing from Kids Count as of November 15, 2000.

$ _____

2

02873

# AGREEMENT

AGREEMENT, made as of this ___ day of _____, 2000, by and between Kids Count Entertainment LLC, an Illinois Limited Liability Company (hereinafter referred to as "KCE") and NEWCO, a to be formed Delaware Limited Liability Company (hereinafter referred to as "NEWCO"), or its assigns. KCE and NEWCO are sometimes collectively called the "Parties".

WHEREAS, KCE has been engaged in the business of production and distribution of children's entertainment and educational material and is the owner of certain assets including, but not limited to inventories, intellectual property, contract rights and miscellaneous assets used in connection with the operation of its business;

WHEREAS, KCE desires to provide, and NEWCO desires to receive, the exclusive right to the use of KCE assets in the operation of NEWCO's business pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants and conditions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

### Section 1. Grant of Exclusive Rights to Assets of KCE.

Upon the terms, royalty payments, and conditions set forth herein, KCE hereby grants to NEWCO the exclusive, world-wide rights to the use of any and all assets related to the operation of the KCE business, whether specified or unspecified in this Agreement, and which shall include the exclusive use of all intellectual properties developed by KCE, including the Kids Count name and logo, music, the right to existing inventory and the exclusive right to manufacture, import, use, sell and distribute the KCE products listed on Schedule 1 ("Assets").

### Section 2. Royalty and Payment.

    A. NEWCO shall pay to KCE a royalty of Twenty-Five Percent (25%) of gross sales receipts from the sale of the KCE products manufactured by NEWCO until the expiration of this Agreement. The term "gross sales" shall mean gross sales based on the wholesale price to the retail trade, or retail price if sold directly to the consumer, less quantity discounts and actual unreplaced returns, but no deduction shall be made for uncollectible accounts, commissions, taxes, discounts other than quantity discounts, such as cash discounts and discounts attributable to issuance of a letter of credit, or any other amount. No costs in the manufacture, sale, distribution, promotion or advertisement of the KCE products, or development and overhead costs attributable to NEWCO shall be deducted from any royalty payments to KCE.

    B. NEWCO shall pay to KCE a royalty of Fifty percent (50%) of gross sales receipts from the sale of KCE products currently in inventory, which inventory is listed in Schedule 2B.

    C. Within thirty (30) days after the close of each calendar quarter, NEWCO shall furnish to KCE complete and accurate statements showing the sales volume of the KCE products, gross sales price, itemized deductions from gross sales price, and sales receipts of the KCE products distributed and/or sold by NEWCO during the preceding calendar quarter, together with any returns made during the preceding quarter. Such statements shall be furnished to KCE

whether or not any KCE products have been sold, or any payment is shown to be due to KCE, during the calendar quarter in which such statements are due. Any payments due to KCE shall be made along with the quarterly statements and be based on sales receipts from the preceding calendar quarter.

Section 3. **Recordkeeping**    NEWCO agrees that it will at all times keep a separate complete, true and correct book of account containing current record of sales of KCE products and other data in sufficient detail to enable the royalties payable under this Agreement to be computed and verified.

Section 4. **No Limitation on Use of Trademarks, etc.** The granting of the exclusive rights to use of the Assets herein and the acceptance of royalties hereunder shall constitute an approval of or acquiescence in NEWCO's practices with respect to trademarks, trade names, corporation names, advertising, or similar practices with respect to KCE products, and the granting of such exclusive rights shall constitute an authorization or approval of, or acquiescence in the use of the Kids Count name or any trade name or trademark of KCE in connection with the manufacture, advertising or sale of KCE products.

Section 5. **Duration and Termination**.

    A.    Unless otherwise terminated as hereinafter set forth, this Agreement shall continue in full force for three (3) years from the execution of this Agreement ("Initial Term"). NEWCO shall, in its sole discretion, have the right to extend this Agreement an additional three (3) years under the same terms and conditions as the Initial Term, ("Extended Term") by providing KCE written notice of its intention to extend within ninety (90) days prior the expiration of the Initial Term;

    B.    KCE shall have the right to terminate this Agreement in the event of any of the following:

        1. NEWCO fails to perform any material obligation contained in this agreement on its part to be performed and such failure shall remain unremedied for ninety (90) days after notice thereof by KCE specifying such breach;

        2. Dissolution, insolvency or bankruptcy of NEWCO whether voluntary or involuntary;

        3. Appointment of a trustee or receiver for NEWCO;

then, and in addition to all other rights and remedies which KCE may have at law or in equity, KCE may, at its option, terminate this Agreement by notice thereof in writing specifying the reason for such termination and a termination date. Such termination shall become effective ninety (90) days from the date of termination set forth in the notice of termination. NEWCO will distribute remaining KCE products in inventory during this ninety (90) day period, and will continue payment of applicable royalties to KCE. At the end of the ninety (90) day period, and upon termination of this Agreement, NEWCO will furnish a detailed statement of existing KCE products in inventory, which will be disposed of at the direction of KCE.

    C.  NEWCO shall have the right to terminate this Agreement upon ninety (90) days prior written notice to KCE. NEWCO will distribute and/or sell remaining KCE products in inventory during this ninety (90) day period, and will continue payment of applicable royalties to KCE. At

2

02875

the end of the ninety (90) day period, and upon termination of this Agreement, NEWCO will furnish a detailed statement of existing KCE products in inventory, which will be disposed of at the direction of KCE.

D. Neither party shall be liable by reason of termination of the Agreement to the other for compensation, reimbursement, or damages on account of any loss of prospective profits or royalties on anticipated sales of the KCE products.

E. Upon termination or expiration of the Agreement, all rights, licenses and privileges granted NEWCO hereunder shall automatically revert to KCE and NEWCO shall execute any and all documents reasonably necessary to evidence such automatic reversion.

### Section 6. Purchase Option.

A. KCE hereby grants to NEWCO the option to purchase its Assets, which option may be exercisable by NEWCO upon expiration of the Initial Term or anytime during the Extended Term.

B. KCE may not offer to sell its Assets during the term of this Agreement, including any extensions, without the prior written consent of NEWCO.

C. The price to be paid by NEWCO to KCE for the Assets shall be $1 more than the outstanding debt of KCE as of the Closing Date minus any royalty payments made pursuant to this Agreement, if any, at the time the purchase option is exercised.

### Section 7. Closing.
The closing shall take place on _____, 2000 ("Closing Date"), or at such other time as the Parties may agree in writing.

### Section 8. KCE Obligation Prior to Closing.

**8.1 KCE Operation of Business Prior to Closing.** KCE agrees that between the date of this Agreement and the Closing Date, it will:

8.1.1 Continue to operate the business that is the subject of this Agreement in the usual and ordinary course and in substantial conformity with all applicable laws, ordinances, regulations, rules, or orders, and will use its best efforts to preserve the continued operation of its business with its customers, suppliers, and others having business relations with KCE, with it being acknowledged by NEWCO that KCE has essentially ceased operations in contemplation of this transaction.

8.1.2 Not assign, pledge, sell, lease, or otherwise transfer or dispose of any Assets, whether now owned or hereafter acquired, except in the normal and ordinary course of business and in connection with its normal operation.

8.1.3 Maintain Assets, including inventories, in their present condition, reasonable wear and tear and ordinary usage excepted.

**8.2 Access to Premises and Information.** At reasonable times prior to the Closing Date, KCE will provide NEWCO with reasonable access during business hours to the assets, titles, contracts, and records of KCE and furnish such additional information concerning KCE business as NEWCO from time to time may reasonably request.

3

C2876

8.3 **Conditions and Best Efforts.** KCE will use best efforts to effectuate the transactions contemplated by this Agreement and to fulfill all the conditions of the obligations of KCE under this Agreement, and will do all acts and things as may be required to carry out its obligations under this Agreement and to consummate and complete this Agreement.

**Section 9. Covenants of NEWCO Prior to Closing.**

9.1 **Conditions and Best Efforts.** NEWCO will use best efforts to effectuate the transactions contemplated by this Agreement and to fulfill all the conditions of NEWCO's obligations under this Agreement, and will do all acts and things as may be required to carry out NEWCO's obligations and to consummate this Agreement.

9.2 **Confidential Information.** If for any reason this Agreement is not consummated by the Parties, NEWCO will not disclose to third parties any confidential information received from KCE in the course of investigating, negotiating, and performing the transactions contemplated by this Agreement.

**Section 10. Rights and Obligations Subsequent to Closing.**

10.1 **Liability Insurance.** Subsequent to the Closing Date, NEWCO will cause KCE to be carried as an insured party under all of NEWCO's insurance policies that provide liability coverage for the duration of this Agreement. NEWCO will carry liability insurance, which provides a minimum of $1,000,000 in coverage and provide KCE with a copy of any liability insurance policies in effect during this Agreement, as well as proof of payment and continued coverage.

10.2 **Sales Leads.** Subsequent to the Closing Date and throughout the term of this Agreement, KCE will direct to NEWCO all communications, inquiries, requests and leads it receives concerning the sale or distribution of KCE products.

**Section 11. KCE Representations and Warranties.** KCE represents and warrants to NEWCO as follows:

11.1 **Corporate Existence.** KCE is now, and on the Closing Date will be, a limited liability company duly organized, validly existing and in good standing under the laws of the State of Illinois, has all requisite corporate power and authority to own its assets and carry on its business and is good standing in each jurisdiction in which such qualification is required.

11.2 **Corporation Power and Authorization.** KCE has full corporate authority to execute and deliver this Agreement and any other agreement to be executed and delivered by KCE in connection herewith, and to carry out the transactions contemplated hereby. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate and shareholder action. No other corporate proceedings by KCE will be necessary to authorize this Agreement or the carrying out of the transactions contemplated hereby. This Agreement constitutes a valid and binding Agreement of KCE in accordance with its terms.

11.3 **Conflict with Other Agreements, Consents and Approvals.** With respect to (i) any applicable law, statute, rule or regulation, (ii) any contract to which KCE is a party or may be bound, or (iii) any judgment, order, injunction, decree or ruling of any court or governmental

4

C2877

authority to which KCE is a party or subject, the execution and delivery by KCE of this Agreement and any other agreement to be executed and delivered by KCE in connection herewith and the consummation of the transactions contemplated hereby will not (a) result in any violation, conflict or default, or give to others any interest or rights, including rights of termination, cancellation or acceleration, (b) require any authorization, consent, approval, exemption or other action by any court or administrative or governmental body which has not been obtained, or any notice to or filing with any court or administrative or governmental body which has not been given or done.

11.4 **Compliance with Law.** KCE use and occupancy of its assets, wherever located, has been in compliance with all applicable federal, state, local or other governmental laws or ordinances, the non-compliance with which, or the violation of which, might have a material adverse affect on the assets or the financial condition, results of operations or anticipated business prospects of NEWCO, and KCE has received no claim or notice of violation with respect thereto. KCE has obtained all material permits, licenses, franchises and other authorizations necessary for the conduct of its business.

11.5 **Tax and Other Returns and Reports.** (i) All federal, state, local and foreign tax returns and reports (including without limitation all income tax, social security, payroll, unemployment compensation, sales and use, excise, privilege, property, license, and school) required to be filed by KCE ("Tax Returns") have been filed with the appropriate governmental agencies in all jurisdictions in which such returns and reports are required to be filed, and all such returns and reports properly reflect the taxes of KCE for the periods covered thereby; and (ii) all federal, state, and local taxes, assessments, interest, penalties, deficiencies, fees and other governmental charges or impositions, including those enumerated above with respect to the Tax Returns, which are called for by the Tax Returns, or which are claimed to be due from KCE by notice from any taxing authority, or upon or measured by its properties, assets or income ("Taxes"), have been properly accrued or paid by or at the Closing if then due and payable.

11.6 **Title to Assets.**

A. KCE holds good and marketable title to Assets, free and clear of restrictions on or conditions to transfer or assignment, other than those listed on Schedule 11.6A. KCE holds the Assets free and clear of all liens, pledges, charges, or encumbrances, except for the liens in favor of Robert Leeper and Harris Bank, which are acknowledged by NEWCO.

B. NEWCO agrees not to assign, pledge, collateralize, lease, or otherwise transfer or dispose of Assets, without prior written consent of KCE and the acknowledged lienholders.

11.7 **Noncancelable Contracts.** At the time of Closing, there will be no material leases, employment contracts, contracts for services or maintenance, or other similar contracts existing or relating to or connected with the operation of KCE business not cancelable within 30 days, except those Agreements listed on Schedule 11.7.

11.8 **Litigation.** KCE has no knowledge of any claim, litigation, proceeding, or investigation pending or threatened against KCE, except those listed on Schedule 11.8.

11.9 **Intellectual Property.** KCE (i) owns or has the right to use, free and clear of all liens except for the ones by Robert Leeper and Harris Bank, charges, claims and restrictions, those patents, trademarks, service marks, trade names, copyrights, licenses, and other intellectual property rights necessary for the operation of its businesses now conducted or presently proposed

5

to be conducted, and (ii) to its knowledge, and except for the payments required in connection with those patents, trademarks, service marks, trade names, copyrights, licenses and other intellectual property rights listed on Schedule 11.09, is not obligated or under any liability whatsoever to make any payments by way of royalties, fees or otherwise to any owner or licensee of, or other claimant to, any patent, trademark, service mark, trade name, copyright or other intangible asset, with respect to the use thereof or in connection with the conduct of its business or otherwise. To the knowledge of KCE, it has not infringed upon nor is it infringing upon any patent, trademark, service mark, trade name, copyright or other intellectual property of any third party. KCE is not aware of any violation by a third party of any of KCE patents, licenses, trademarks, service marks, trade names, copyrights, trade secrets or other proprietary rights.

11.10 **Covenant Not to Compete.** During the term of this Agreement, including any extension hereof, KCE shall not directly or indirectly, own, manage, operate, control, participate in, or be connected in any manner with the ownership, management, operation or control of any company having business activities directly competitive with NEWCO. In the event KCE breaches or threatens to breach this paragraph, NEWCO shall be entitled to a preliminary restraining order and injunction restraining KCE from violating its provisions. Nothing in this Agreement shall be construed to prohibit NEWCO from pursuing any other available remedies for such breach or threatened breach, including the recovery of damages from KCE.

11.11 **Accuracy of Representations and Warranties.** None of the representations or warranties of KCE contain or will contain any untrue statement of a material fact or omit or will omit or misstate a material fact necessary in order to make statements in this Agreement not misleading. KCE knows of no fact that has resulted or will result in a material change in the business, operations, or assets of KCE that has not been set forth in this Agreement or otherwise disclosed to NEWCO.

**Section 12. Representations of NEWCO.**

NEWCO represents and warrants:

12.1 **Authorization.** NEWCO has full authority to execute and deliver this Agreement and any other agreement to be executed and delivered by NEWCO in connection herewith, and to carry out the transactions contemplated hereby. This Agreement shall constitute a valid and binding Agreement of NEWCO, in accordance with its terms.

12.2 **Conflict with Other Agreements, Consents and Approvals.** With respect to (i) any applicable law, statute, rule or regulation, (ii) any contract to which NEWCO is a party or may be bound, or (iii) any judgment, order, injunction, decree or ruling of any court or governmental authority to which NEWCO is a party or subject, the execution and delivery by NEWCO of this Agreement and any other agreement to be executed and delivered by NEWCO in connection herewith and the consummation of the transactions contemplated hereby will not (a) result in any violation, conflict or default, or give to others any interest or rights, including rights of termination, cancellation or acceleration, or (b) require any authorization, consent, approval, exemption or other action by any court or administrative or governmental body which has not been obtained, or any notice to or filing with any court or administrative body which has not been given or done.

12.3 **Sales Activities.** NEWCO will not be subject to any minimum guarantee of sales of KCE products. NEWCO, will, however, be subject to use reasonable efforts to promote, maintain and increase the sale of KCE products by all usual and ethical means, including, advertising and

6

C2879

personal solicitation of customers, demonstrations, processing of orders and customer complaints and identification of NEWCO as distributor of KCE products in business listings, trade publications, directories, stationary and advertisements through distribution of catalogues, brochures and advertising matter. Failure of NEWCO to use reasonable efforts to promote the sale of KCE products shall be grounds for termination in accordance with Section 5(b) of this agreement.

12.4 **Accuracy of Representations and Warranties.** None of the representations or warranties of NEWCO contain or will contain any untrue statement of a material fact or omit or will omit or misstate a material fact necessary in order to make the statements contained herein not misleading.

**Section 13. Conditions Precedent to NEWCO's Obligations.** The obligation of NEWCO to receive the exclusive rights to Assets is subject to the fulfillment, prior to or at the Closing Date, of each of the following conditions, any one or portion of which may be waived in writing by NEWCO:

13.1 **Representations, Warranties and Covenants of KCE.** The representations and warranties of KCE contained herein and the information contained in the Schedules and any other documents delivered by KCE in connection with this Agreement shall be true and correct in all material respects at the Closing; and KCE shall have performed all obligations and complied with all agreements, undertakings, covenants and conditions required by this Agreement to be performed or complied with by it or prior to the Closing Date.

13.2 **Conditions of the Business.** There shall have been no material adverse change in the manner of operation of KCE business prior to the Closing Date.

13.3 **No Suits or Actions.** At the Closing Date no suit, action, or other proceeding shall have been threatened or instituted to restrain, enjoin, or otherwise prevent the consummation of this Agreement or the contemplated transactions.

**Section 14. Conditions Precedent to Obligations of KCE.** The obligations of KCE to consummate the transactions contemplated by this Agreement is subject to the fulfillment, prior to or at the Closing Date, of each of the following conditions, any one or a portion of which may be waived in writing by KCE;

14.1 **Representations, Warranties, and Covenants of NEWCO.** All representations and warranties made in this Agreement by NEWCO shall be true as of the Closing Date as fully as though such representations and warranties had been made on and as of the Closing Date, and NEWCO shall not have violated or shall not have failed to perform in accordance with any covenant contained in this Agreement.

**Section 15. NEWCO's Acceptance.** NEWCO represents and acknowledges that it has entered into this Agreement on the basis of its own examination, personal knowledge, and opinion of the value of the business. NEWCO has not relied on any representations KCE other than those specified in this Agreement.

**Section 16. Indemnification.**

16.1 **KCE Indemnification.** KCE hereby agrees to indemnify and hold NEWCO, its successors, and assigns harmless from and against (i) Any and all damages, losses, claims, liabilities,

7

C2880

deficiencies and obligations of every kind and description, contingent or otherwise, arising out of or related to the operation of the KCE business prior to the close of business on the day before the Closing Date, and KCE will continue to indemnify and hold NEWCO harmless against any claims arising out of NEWCO's use of KCE intellectual property following the Closing Date (ii) any and all damage or deficiency resulting from any material misrepresentation, breach of warranty or covenant, or non-fulfillment of any agreement on the part of KCE under this Agreement, and (iii) any and all actions, suits, claims, proceedings, investigation, audits, demands, assessments, fines, judgments, costs and other expenses (including, without limitation, reasonable audit and attorneys fees) incident to any of the foregoing.

16.2 **NEWCO's Indemnification.** NEWCO agrees to defend, indemnify, and hold harmless KCE from and against any and all claims, liabilities, and obligations arising out of (i) any unauthorized use of any trademark, service mark, copyright, patent, process, method or device by NEWCO in connection with KCE products; (ii) any and all damage or deficiency resulting from any material misrepresentation, breach of warranty or covenant, or non-fulfillment of any agreement on the part of NEWCO under this Agreement, and (iii) any and all actions, suits, claims, proceedings, investigation, audits, demands, assessments, fines, judgments, costs and other expenses (including, without limitation, reasonable audit and attorneys fees) incident to any of the foregoing.

**Section 17. Relationship of the Parties.** The relationship of the parties to this agreement shall be licensor and licensee. Nothing herein shall be construed to constitute the parties as partners, joint venturers, or as employees or agents of each other. Except as expressly set forth herein, neither party has any express or implied right or authority to assume or create any obligations on behalf of, or in the name of, the other.

**Section 18. Notices.** All notices, consents, requests, demands offers, reports and other communications required or permitted shall be deemed to be given when personally being delivered to the party entitled thereto, or when sent by facsimile transmission with confirmation, postage prepaid to and addressed to the party at the address set forth below, or such other address as either party may designate by written notice other:

If to KCE:  Anthony J. Nashart
            Foran, Nashart & O'Toole
            55 W. Wacker Drive
            Suite 950
            Chicago, IL 60601

If to NewCo: Ronald Rosenblum
             Rosenblum & Vandenberg
             200 W. Madison St.
             Suite 1950
             Chicago, IL 60606

**Section 19. Survival.** Any of the terms and covenants contained in this Agreement, which require the performance of either party after the Closing Date, shall survive the Closing Date and delivery of the deed.

8

C2881

Section 20. **Waiver.** Failure of either party at any time to require performance of any provision of this agreement shall not limit the party's right to enforce the provision, nor shall any waiver of any breach of any provision be a waiver of any succeeding breach of any provisions or a waiver of the provision itself for any other provision.

Section 21. **Assignment.** Except as otherwise provided within this Agreement, neither party hereto may transfer or assign this Agreement without prior written consent of the other party.

Section 22. **Law Governing.** This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

Section 23. **Attorney Fees.** In the event an arbitration, suit or action is brought by any party under this Agreement to enforce any of its terms, or in any appeal there from, it is agreed that the prevailing party shall be entitled to reasonable attorneys fees to be fixed by the arbitrator, trial court, and/or appellate court.

Section 24. **Titles and Captions.** All article, section and paragraph titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the context nor affect the interpretation of this Agreement.

Section 25. **Pronouns and Plurals.** All pronouns and any variations there of shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the Person or Persons may require.

Section 26. **Entire Agreement.** This Agreement contains the entire understanding between and among the parties and superceded any prior understandings and agreements among them respecting the subject matter of this Agreement.

Section 27. **Agreement Binding.** This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto.

Section 28. **Good Faith, Cooperation and Due Diligence.** The parties hereto covenant, warrant and represent to each other good faith, complete cooperation, due diligence and honesty in fact in the performance of all obligations of the parties pursuant to this Agreement. All promises and covenants are mutual and dependant.

Section 29. **Counterparts.** This Agreement may be executed in several counter-parts and all so executed shall constitute one Agreement, binding on all parties hereto even though all the parties are not signatories to the original or the same counterpart.

Section 30. **Savings Clause.** If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

Section 31. **Acknowledgment of Conflict of Interest** The parties to this Agreement acknowledge that there is an inherent potential for conflict of interest among certain individuals, notably Vicki Esralew and Robert Aren, as they both play an active role in each of the parties to this Agreement and because the Agreement establishes rights and

9

C2882

obligations of each of the Parties to the Agreement. The Parties to this Agreement hereby waive any potential conflicts of interest that may arise as a result of Ms. Baralow's and Mr. Aron's active roles in each of the parties.

**IN WITNESS WHEREOF**, the parties to this Agreement have duly executed it as of the day and year first written above.

Kids Count Entertainment, LLC
An Illinois Limited Liability Company

By:_____

Its_____

NEWCO

By:_____

Its_____

10

C2883

## SCHEDULE 1

### KIDS COUNT PRODUCTS

Jack's House

Jack's Attic

Home Music CD

Kids Count Workout Video

Spanided

C2884

## SCHEDULE 2B

| Product | Current Inventory |
|---|---|
| Jack's House | 120 |
| Jack's Attic | 0 |
| Kid's Count Workout Video | 1602 |
| Kid's Count Workout Video w/Cassette Sampler | 1006 |
| Kids Count Workout Video w/CD | 161 |
| Home CD | 1073 |
| Home Cassette | 7966 |

12

C2885

SCHEDULE 11.6A

NONE

13

C2886

SCHEDULE 11.7

NONE

14

C2887

## SCHEDULE 11.2

NONE

15

C2888

**SCHEDULE 11.9**

NONE

*Last Page*

16

02889