IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| | ) | Case No. 04-B-24393 |
| VICKI E. ESRALEW | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | | |
| ROLLIN J. SOSKIN, EUGENE TERRY, NICOLE TERRY and TERRY'S COMPANY, INC. Plaintiffs, | ) ) ) ) | |
| | ) | |
| vs. | ) ) | Adversary Proceeding No. 04 A 3774 |
| | ) | |
| VICKI E. ESRALEW, Defendant. | ) ) | Judge Goldgar |

**PLAINTIFFS' TRIAL BRIEF**

NOW COME the Plaintiffs, Rollin J. Soskin, Eugene Terry, Nicole Terry and Terry's Company, by and through their attorney, Thomas C. Crooks, and present Plaintiffs' Trial Brief.

**Introduction**

Plaintiffs have filed a four count adversary complaint alleging fraud on the part of the Debtor, Vicki Esralew, arising from a business transaction wherein the plaintiffs provided capital and services in exchange for a small percantage ownership in Esralew's business. Plaintiffs' complaint is brought under Title 11, section 523, "Exceptions to Discharge." Specifically, Esralew should be denied discharge of all debts owed the plaintiffs pursuant to §523(a)(2)(A) ("false pretenses, a false representation, or actual fraud…"), §523(a)(4) ("for a fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny") and §523(a)(6) ("for willful and malicious injury by the debtor to another entity or to the property of another entity").

1

**Facts**

The debtor, Vicki Esralew, is an experienced businesswoman having worked as an account executive for WGN and having founded and run a series of corporations and other business entities. Esralew used one of the plaintiffs, Rollin Soskin, as an attorney from time to time during the period 1988 to 1993. After nearly five years of no contact between Esralew and Soskin, they ran into each other in the summer of 1998. This chance meeting led to some additional estate planning work done for Esralew and her husband by Soskin and led to conversations regarding Esralew's need for some management expertise and capital for her business, Kids Count Entertainment, LLC.

Esralew was looking for money and help in running the business and, at her request, Soskin sought out and found investors, Gene and Nicole Terry. The parties entered into a series of discussions which culminated in the signing of a Memorandum of Agreement in which it was agreed that the Terrys would loan money to Kids Count, "as cash flow required" and that Soskin, a CPA as well as an attorney, would provide services of a legal and business nature to help in the running of the business. Ultimately the Terrys advanced $173,363 to Kids Count.

The Terrys had the right to convert their loan to a purchase of up to ten percent of the company. Soskin received two percent of the company for bringing the parties together and for providing assistance with the company's management and legal affairs. He also was to receive an option to *purchase* another eight percent of the company for $200,000.

The agreement was reached after a series of meetings occurring over a few short weeks in November of 1998. Esralew needed money quickly, she claimed, to prepare a television commercial to sell the products so that she could take advantage of the Christmas sales season.

2

The commercial did not get on television in time for the Christmas sales season and, as a result, the sales were nowhere near what was projected by Esralew. Nevertheless, the plaintiffs, and they believed Esralew as well, were ready to go forward with the business in hopes of building it.

By the spring of 1999 the relationship of the parties had deteriorated. Esralew had stopped communicating with the plaintiffs. Esralew stopped meeting with the plaintiffs regularly as required under the agreement. Only later did plaintiffs learn that during the negotiations with plaintiffs, immnediately upon signing the agreement and continuing thereafter Esralew had been "double dealing" the plaintiffs, seeking other investors with which to replace them, withholding information from them and outright lying. The evidence will show that, unbenownst to the plaintiffs, Esralew knew at the time she entered into the Memorandum of Agreement that it was too late to produce a television commercial to take advantage of the Christmas sales season.

The evidence will show that the prospectus Esralew provided to the plaintiffs was filled with false and exaggerated statements regarding the condition of the company and its prospects for the future. Additionally, after the parties had parted ways, plaintiffs learned that what had happened to them was part of a pattern of Esralew taking money from people and then reneging on her part of the bargain.

The evidence will show that from at least 1998, and going forward, Esralew did little or no creative work for Kids Count or any of the other business entities she created. Rather, Esralew continually sought and procured "investors" whose money was primarily used to pay six figure salaries to Esralew and her husband, Robert Aren. Aren did little or no work for the salaries he was paid.

3

Based upon the parties' agreement, Esralew agreed that "all of her personal services, appearances, creative efforts, activities and products shall be performed and or created for the exclusive benefit of Kids Count." Despite this agreement, Esralew received and kept salaries from other entities for her personal services when these funds should have been, based on the parties' agreement, paid into Kids Count.

**The Legal Issues**

The first legal issue presented by this case is based upon Esralew's claim that Soskin had a conflict of interest when negotiating and entering into the Memorandum of Agreement and, therefore, the agreement is void and unenforceable. As this court noted in denying Esralew's summary judgment motion, this defense is applicable only to Soskin.

Esralew has also pled, as an affirmative defense, that paragraph 18 of the parties' agreement is an unreasonable restrictive covenant. The court rejected this defense as a matter of law in its summary judgment ruling. Esralew also argued economic duress as a defense in her motion for summary judgment, though she did not plead economic duress in her answer. This purported defense was rejected by the court due to Esralew's failure to even remotely make a prima facie case. Plaintiffs do not believe that either of these purported defenses will be argued at trial. If either is an issue, plaintiffs' rely upon the arguments and citations in their memorandum of law in opposition to summary judgment and this courts ruling on said motion.

Secondly, plaintiffs must prove that the actions engaged in by Esralew meet the legal requirements for fraud and willfullnes as required by §523(a)(2)(A) ("false pretenses, a false representation, or actual fraud…"), §523(a)(4) ("for a fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny") and §523(a)(6) ("for willful and malicious injury by the debtor to another entity or to the property of another entity").

4

The law of the state in which the debtor resides is controlling in bankruptcy matters. *Small v. Beverly Bank*, 936 F.2d 945, 947 (7th Cir. 1991) ("the law (including the choice of law rules) of a jurisdiction in which the debtor is located governs the perfection and effect of perfection or non-perfection of a security interest."). See also *Supporters to Oppose Pollution, Inc. v. The Heritage Group*, 973 F.2d 1320 (7th Cir. 1992); *In re Michael J. Krueger*, 192 F.3d 733 (7th Cir. 1999). Therefore, Illinois substantive law should be applied.

**The Agreement Cannot be Voided Based on an Alleged Conflict of Interest on the Part of Soskin.**

Soskin, a licensed attorney, from time to time did legal work for Esralew and her husband prior to entring into the business transaction at issue. From this fact Esralew has argued that the agreement is, therefore, void, based upon the alleged conflict of interest.

In *McFail v. Braden,* 19 Ill.2d 108, 166 N.E.2d 46 (1960) the court addressed a transaction involving the sale of land between an attorney and his client. While acknowledging that the attorney bore the burden of showing the fairness of the transaction, the court was very clear that "…an attorney is not prohibited from dealing with his client or buying his property, and such contracts, if open, fair and honest, when deliberately made, are as valid as contracts between other parties." *McFail,* 19 Ill.2d at 117.

Important factors in determining whether a transaction between an attorney and his client is fair, and thus enforceable, are (1) whether there was full and frank disclosure of any potential conflict of interest; (2) whether the attorney provided adequate consideration; and (3) whether the client received independent advice before entering into the agreement. *McFail v. Bradden*, 19 Ill 2d 108, 166 NE 2d 46 (1960); *Klaskin v. Klepak*, 126 Ill 2d 376, 534 NE 2d 971 (1989).

5

In weighing the above factors, the trier of fact should also consider the level of sophistication of the defendants in entering into a transaction like the one before this court and to what extent the plaintiff was in a position, because of his relationship to the defendants, to exert undue influence. *Klaskin v. Klepak*, *supra*, 126 Ill. 2d at 390-391, 534 N.E.2d at 977.

While a transaction between an attorney and his client raises a presumption of undue influence, "once evidence is introduced contrary to the presumption, the bubble bursts and the presumption vanishes." *Franciscan Sisters Health Care Corporation v. Dean,* 95 Ill.2d 452, 462 (1983).

The evidence will show that there was a full disclosure of the potential of a conflict of interest before Esralew entered into the Memorandum of Agreement. Eralew understood the concept of a conflict of interest on the part of an attorney because she had been in just such a situation on prior occasions. When the issue of a possible conflict arose, the parties to the agreement met in order to discuss the possibility of conflict. Esralew was told that she had to seek separate counsel and she said she would. Esralew had used a number of attorneys in her personal and business dealings in the past. In fact, she had used the services of two separate lawyers earlier that same year. Later, both Esralew and Aren acknowledged that they had sought outside counsel to review the agreement.

The agreement itself contained a provision in which plaintiff was informed in writing about the potential conflict and she waived any such conflict. By executing the agreement Esralew acknowledged that she "…has engaged such attorneys, accountants, or other professionals as they have determined intheior own discretion to be necessary…hereby waive[s] any actual or apparent conflict of interest resulting from the participation of Soskin…"

6

It is also important that Esralew is a sophisticated business woman. After working for WGN as an account executive Esralew started and operated her own advertising agency from 1989 to 1993 when she began the business which is the basis of this case.

The most important criteria to be considered is whether or not the agreement was fair. The agreement gave the Terrys the option to convert their loan into a ten percent ownership interest. It gave Soskin the right to *purchase* an 8% interest in the company (along with the 2% Soskin received for bringing the parties together and providing legal/business services of up to 60 hours per month for six months). The option that the parties received were really of no value unless the value of the company rose to above two million dollars. The evidence will show that as a matter of law the agreement was fair.

Esralew's conflict of interest defense must also lose based on the established principle that a party may not receive the benefit of an agreement and then seek to have the court excuse them from performing, on the basis that the agreement is void. In *Partee v Compton*, 273 Ill. App. 3d 721, 653 NE 2d 454 (5th Dist. 1995) the attorney plaintiff filed a breach of contract action to enforce a retainer agreement regarding representation on a personal injury case. The defendant-client, like the defendant here, countered by arguing that the agreement violated the code of professional conduct and, therefore, the agreement was void.

The court, while acknowledging that the agreement at issue had violated the code, nevertheless, ruled for the plaintiff attorney. The court reasoned that the defendant, having received the benefit of his bargain, could not at that point, be excused from performing. The same principle applies here. Esralew received the benefit of hundreds of thousands of dollars provided by the Terrys. Not only was this cash infusion arranged by Soskin, but Soskin also contributed hundreds of hours of free labor to defendants, providing legal and non-legal services,

7

without compensation. Having received and accepted the benefit, Esralew cannot now seek to declare the agreement void.

**Plaintiff's Claims are Nondischargeable Under §523(a)(2)(A), §523(a)(4) and §523(a)(6)**

Plaintiffs must prove their claims by a preponderance of the evidence. *Matter of Bero,* 110 F.3d 462, 465 (7th Cir. 1997). Circumstantial evidence may be used to show an intent to defraud. For example, "the existence or cumulative effect of the pattern or series of transactions or course of conduct…" may be used to show fraudulent intent. *Village of SanJose v. McWilliams,* 284 F.3d 785, 791 (7th Cir. 2002).

### Title 11 §523(a)(2)(A)

A debt for "money, property [or] services" will not be discharged if it was incurred through "false pretenses, a false representation, or actual fraud…" 11 U.S.C. §523(a)(2)(A).

In order to prove their claim of nondischargeability under this section plaintiffs must establish the following: (1) the debtor obtained the money/services through a representation that was false or was made with such reckless regard for the truth as to constitute willful misrepresentation; (2) the debtor had an actual intent to defraud; and (3) the creditor actually and justifiably relied on the false representation. *In re Maurice,* 21 F.3d 767,774 (7th Cir. 1994); *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437(1995).

### Title 11 §523(a)(4)

Esralew is not entitled to discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity…" 11 U.S.C. §523(a)(4).

The existence of a fiduciary relationship under this section of the bankruptcy code is a question of federal law. *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). Although the court may refer to state law to determine whether a fiduciary relationship exists. *Meyer v. Watson,* 36 F.3d 1375, 1382 (7th Cir. 1994). Indeed, in Illinois "…each partner is a fiduciary of the other." *Bandringa,* 20 Ill.2d 167, 174, 170 N.E.2d 116, 120 (1960).

A fiduciary relationship under §523(a)(4) is defined as "a difference in knowledge or power between fiduciary and principal which…gives the former a position of ascendency over the latter." *In re Marchiando,* 13 F.3d 1111, 1116 (7th Cir. 1994). Such a fiduciary relationship is found to exist in a "director-shareholder relation, or a managing partner-limited partner relation…" (*Id.* at 1116) or when a "general partner defrauds a limited partner." *Woldman v. Johnson,* 92 F.3d 546, 547 (1996).

**Title 11 §523(a)(6)**

Esralew is not entitled to discharge for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6).

"In order for a debt to be held dischargeable under §523(a)(6), [plaintiffs have] the burden of proving that the injury sustained…resulted from an act that was both willful and malicious." *In re Arlington*, 192 B.R. 494, 499 (Bankr. N.D.Ill. 1996). "The term 'willful' means deliberate or intentional and 'malicious' means wrongful and without just cause or excuse; it does not require ill will or specific intent to do harm." *Id.* at 499. The phrase 'Willful and malicious injury' encompasses "willful and malicious conversion.'" *In the Matter of Martin,* 130 B.R. 930, 947 (Bankr. N.D. Ill. 1991).

9

**Conclusion**

The evidence at trial will support each of the legal theories set out above. Esralew, through the use of false statements, induced the plaintiffs to invest in her business, when she had no intention of honoring her promises to plaintiffs. Esralew's actions were willful and malicious and done while Esralew was acting in fiduciary capacity towards the plaintiffs. Esralew's debts to the plaintiff should be found nondischargeable and judgments should be entered against Esralew and in favor of the plaintiffs.

/s/ Thomas C. Crooks_____
Thomas C. Crooks, Attorney for Plaintiffs

Thomas C. Crooks
Attorney for Plaintiff
ARDC #00547336
Three First National Plaza, Suite 1950
Chicago, IL 60602-4205
Office (312) 641-2260
Facsimile (312) 641-5220

CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2006 I electronically filed the foregoing Plaintiff's Trial Brief with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Carey M. Stein
Ashman & Stein
150 N. Wacker Drive, Suite 3000
Chicago, Illinois 60606

/s/ Thomas C. Crooks_____
Thomas C. Crooks
Attorney for the Plaintiffs