## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF ) | | |
| ) | | |
| VICKI ESRALEW ) | | |
| ) | | |
| Debtor, ) | | |
| _____) | | |
| ) | | |
| ROLLIN SOSKIN, et. al. ) | | |
| ) | | |
| Plaintiffs ) | No. 04 A 3774 | |
| ) | | |
| v. ) | Judge Goldgar | |
| ) | | |
| VICKI ESRALEW ) | | |
| ) | | |
| Defendant ) | | |

### DEFENDANT'S TRIAL BRIEF

Defendant, Vicki Esralew, by and through her attorneys, ASHMAN & STEIN, respectfully submits the following Trial Brief.

### THE NATURE OF THE CASE

Vicki E. Esralew ("Esralew") filed her voluntary Chapter 7 bankruptcy petition on June 29, 2004. Plaintiffs Rollin J. Soskin ("Soskin"), Eugene Terry ("Terry"), Nicole Terry and Terry's Company Inc. filed the instant adversary complaint against Esralew on October 12, 2004.[1] Esralew filed her Answer to the Complaint on February 10, 2005.

The Plaintiffs allege that they entered into a Memorandum of Agreement with Esralew on November 22, 1998 (the "Agreement"), pursuant to which, *inter alia*, the Terry Plaintiffs

---

[1] Terry, Nicole Terry and Terry's Company Inc. are sometimes hereinafter referred to collectively as the "Terry Plaintiffs"

loaned money to, and Soskin became a member in, an Illinois limited liability company known as Kids Count Entertainment, L.L.C. ("Kids Count"). The Plaintiffs further allege that Esralew had no intention of repaying said money, breached what the Plaintiffs consider to be a restrictive employment covenant in the Agreement, and subsequently transferred substantially all of Kids Count's assets to another entity known as Vickilew Inc., which subsequently sold such assets for "inadequate consideration" to a third party.

Based upon their aforesaid allegations, the Plaintiffs seek an Order that any liability of Esralew to the Plaintiffs not be discharged pursuant to 11 U.S.C § 523(a)(2)(A) [Counts I and II]; that any liability of Esralew to the Plaintiffs attributable to Esralew's purported breach of her "fiduciary duties" to Plaintiffs not be discharged pursuant to 11 U.S.C § 523(a)(4) [Count III]; and that all of Esralew's aforesaid actions were willful and malicious, with the result that such liabilities not be discharged pursuant to 11 U.S.C §523(a)(6). [Count IV]

**FACTS THE DEFENDANT EXPECTS THE EVIDENCE WILL ESTABLISH**

Plaintiff Soskin had represented Esralew before he ran into her in June or July of 1998, when she told him about Kids Count and invited him to review its operation, an offer Soskin accepted in October of 1998. Esralew told Soskin that she believed that if Kids Count could get an infomercial on the air before Christmas, it would be a huge success, but that the company needed funding to produce the infomercial. Soskin believed Esralew's idea had merit and that she just needed proper investors. Soskin knew that Terry, his former law partner, had been successful in business and had money to invest, and introduced Esralew to Terry and his wife, Nicole, in early November 1998.

Esralew impressed the Terrys as someone who was creative, but could not run a

business. After meeting with her, the Terrys did some field work to determine where Kids Count's products were sold and asked for a six month cash flow statement, as the investment Terry was considering making in Kids Count was to get the company through the next three to six months.

The documents Terry relied upon to decide whether to make an "investment" in Kids Count indicated that the company would require between $200,000 and 250,000 from December 1998 through February 1999. After receiving a six month cash flow projection prepared by Soskin, Terry informed Soskin that he would not accept the salaries projected for Soskin and Esralew (which Terry reduced) and prepared a memorandum for Soskin detailing the amount of money he was willing to invest to get Kids Count through the production of an infomercial. Terry was not prepared to invest a lump sum, but was prepared to invest as much as $250,000 depending on what the company needed as far as cash flow. However, because Esralew had told the Plaintiffs that she wasn't good at management and that her inability to deal with cash flow issues and check authorizations had caused the company's past failures (which was consistent with Soskin's opinion that Esralew was incapable of keeping records), Terry was only willing to invest in Kids Count if Soskin remained involved and managed the details.

On November 22, 1998, the parties entered into the Agreement, which was prepared by Soskin with input from all of the parties, each of whom represented that they had properly investigated the circumstances and condition of Kids Count. Soskin understood that he and Terry were to have equal control over the use of Kids Count's funds and that Terry was going to invest money in Kids Count as needed, over a limited period of time and for limited uses. Both Terry and Soskin were to be directors of Kids Count. Esralew was to be responsible for

designing new products, as Terry wanted her freed up to focus on the creative side of the business. In consideration for funding Kids Count's cash flow needs, the Terry Plaintiffs were to receive a note convertible into a 10% ownership interest in the company. Terry was also given a security interest and an assignment of Kids Count's receivables to secure his loan. It was Terry's idea to treat the investment as a loan so that he would be a secured creditor rather than a stockholder.

The Terry Plaintiffs thereafter made receivable loans to Kids Count, including a $27,000 loan based upon receivables from Discovery Toys, which was repaid. At first, Terry watched the company's sales figures and deposited checks in the company's accounts on a day to day or week to week basis, as required based upon information he received from Soskin. However, Terry knew that sometimes there was not enough cash flow to cover Kids Count's payables and saw communications to Soskin from Joanne Livingston, one of Kids Count's employees, seeking immediate assistance with cash flow issues.

Consistent with the intent of the Terry Plaintiffs' loan, Kids Count started shooting an infomercial right away, over the Thanksgiving weekend. Robert Blagman ("Blagman") had already been hired by Kids Count to produce the infomercial and to choose the times it would air, however, it took forever to get post-production work done and Soskin believed that the script was so bad and confusing that he and Terry's wife finally rewrote it. Both Soskin and Terry think Blagman did a terrible job and decided that only Soskin would deal with Blagman, ultimately resulting in Soskin's May 3, 1999 threat to sue Blagman for "breach of contract, breach of fiduciary duty and conversion of funds". On the other hand, Terry believes that Esralew gave her best effort to make the infomercial a success.

The infomercial aired from December 23, 1998 through about January 20, 1999. Although it resulted in a lot of response, less than 50% of the calls were converted into purchases and, by the time it started getting a better response, Kids Count was again out of money and its prospects back to about the same as they were before the Plaintiffs got involved.

By May of 1999, Kids Count was unable to pay its bills and Soskin was advising the Terry Plaintiffs and Esralew to consider putting Kids Count into bankruptcy and/or making an assignment for the benefit of creditors, neither of which Esralew was in favor of doing but which Soskin was pursuing despite her reservations. No plan of any kind was put into operation to continue Kids Count's operations; and after Soskin's failed attempts to put Kids Count into a "forced bankruptcy", he basically lost track of the company.

On November 15, 2000, Esralew wrote to the Terrys with a plan to pay Kids Count's creditors by licensing Kids Count's products to a new company to be formed; and sought the Terry's consent to this arrangement, which the Terrys refused to give. In order to put Kids Count into a position where it could repay its creditors, Esralew also caused Kids Count to enter into distribution and licensing agreements with Vickilew, LLC., a Delaware limited liability company, and with Good Sector LLC, an Illinois limited liability corporation. Each of these agreements recited that Kids Count was the owner of the products and copyrights for the products to be sold and provided that Kids Count was to be paid marketing fees and/or minimum and percentage royalty payments in connection with their sales of such products.

**I.    The Plaintiffs Are Unable to Prevail on Counts I and II of the Complaint**

In order for the Plaintiffs to prevail on their claim under 11 U.S.C. § 523(a)(2)(A), they must be able to prove that: (a) Esralew made a representation; (b) Esralew knew the

5

representation was false at the time the representation was made; (c) Esralew made the false representation with the intention of deceiving the Plaintiffs; (d) the Plaintiffs justifiably relied on such representation; and (e) the Plaintiffs sustained the alleged loss and damage as the proximate result of Esralew's false representation. *Califf v Park (In re Park)* 2002 WL 130948 (Bankr. N.D. Ill); *Bletnitsky v Jairath (In re Jairath)* 259 B.R. 308 (Bankr. N.D. Ill. 2001); *First Nat'l Bank of Red Bud v. Kinnzey (In re Kinzey)*, 761 F 2d 421 (7th Cir. 1985); *Koma v. Brooks (In re Brooks)*, 4 B.R. 237, 238 (Bankr.S.D.Fla.1980); *Berk v. Stewart (In re Stewart)*, 10 B.R. 214, 217 (Bankr. C.D.Cal.1981); *Field v Mans*, 516 U.S. 59, 74, 75, 116 S. Ct. 437 (1995); *Driggs v Black (In re Black)*, 787 F 2d 503, 506 (10th Cir. 1986); *Grogan v Garner*, 498 U.S. 279 (1991)

 Representations are either express or implied. "A false representation is an express misrepresentation, while a false pretense refers to an implied misrepresentation of 'conduct intended to create and foster a false impression.' " *National Bank of North America v. Newmark (In re Newmark)*, 20 B.R. 842, 854 (Bankr.E.D.N.Y.1982) (quoting *H.C. Prange Co. v. Schnore (In re Schnore)*, 13 B.R. 249, 251 (Bankr.W.D.Wis.1981)). Fraud and misrepresentation also may be established by a failure to disclose on the part of the debtor where such failure creates a false impression which is known by the debtor." *Caldwell v. Hanes (In re Hanes)*, 214 B.R. 786, 809 (Bankr.E.D.Va.619 (1997) (citing *O'Connor, CPO v. Booker (In re Booker)*, 165 B.R. 164 (Bankr.M.D.N.C.1994)). If funds are deemed to have been entrusted to a debtor for a specific purpose, the debtor is regarded as impliedly representing his intention to use the funds accordingly." *Fensick v. Segala (In re Segala)*, 133 B.R. 261, 264 (Bankr.D.Mass.1991)

 The "liability" the Plaintiffs seek this Court to find nondischargable arose out of

Esralew alleged representations (i) that the infomercial which the Terry Plaintiffs' "investment" in Kids Count was to fund could be aired by Christmas of 1998; and (ii) that she would commit all of "her personal services, appearances, creative efforts, activities and products...for the exclusive benefit of Kids Count". [Agreement ¶18]. However, the evidence will show that all of the information that Esralew possessed with regard to producing and airing the Kids Count infomercial came from Blagman; that the Plaintiffs had constant contact with Blagman while the infomercial was being produced; and that the Plaintiffs were actually rewriting the infomercial, while contemporaneously advancing funds to Kids Count, in December of 1998. Accordingly, the Plaintiffs will be unable to establish a single intentional misrepresentation made by Esralew regarding the infomercial; and they will also be unable to establish that Esralew failed to disclose something that created a false impression on their part, either at the time they entered into the Agreement, or at any other time.

Morever, regardless of whether Esralew's "promise" to commit all of "her personal services, appearances, creative efforts, activities and products...for the exclusive benefit of Kids Count" was enforceable, the Plaintiffs must prove that Esralew intended to breach this promise at the time she made it in order for §523(a)(2)(A) to apply. *Brzakala v. Brzakala*, 305 B.R. 705, 711 (Bankr.. N.D. Ill. 2004), citing: *Shea v Shea (In re Shea)*, 221 B.R. 491, 496 (Bankr. D. Minn.1998) and *McCrary v Barrack (In re Barrack)*, 217 B.R. 598, 606 (9th Cir. BAP 1998).

Where a §523(a)(2)(A) claim is based on a failure to perform contractual duties, the requisite intent can be inferred from the debtor's failure "to take any steps to perform under the contract" *Brzakala* at 712 [FN3], citing: 4 A. Resnick & H. Sommer, eds., *Colliers on Bankruptcy* ¶ 523.08[i][d] at 523-44). Here, however, there is no evidence that Esralew devoted,

7

or intended to devote, any of her time or energy to any business enterprise other than Kids Count until well after the Terry Plaintiffs ceased to honor their commitment to continue to fund Kids Count's cash flow needs, thereby essentially putting an end to Kids Count's operations. As recognized by this Court in *Brzakala*, the Defendant's efforts and continued performance of her contract duties until Kids Count was out of funds and essentially out of business would tend to dispel any inference that she intended to ignore these duties when she committed to performing them. *Brzakala* at 712 [FN3]

The evidence will also show that none of the funds loaned to Kids Count by the Terry Plaintiffs were ever "entrusted" to Esralew or used for other than their intended purpose. Rather, the evidence will show that all funds flowing into Kids Count, by whatever means, were carefully monitored and controlled by Terry and/or Soskin, that no substantial sum of money could be removed from Kids Count without at least one of their signatures, that status meetings were required to be held twice a month with Plaintiffs, and that the Terry Plaintiffs' funds were, in fact, used to pay for Kids Count's infomercial- which, unfortunately, was a bust.

The Plaintiffs are also unable to demonstrate that they justifiably relied on any of Esralew's representations, even if they had been untrue. Although "justifiable reliance" is a less demanding standard than "reasonable reliance", a creditor "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. 59, 61 (1995) (quoting Restatement (Second) of Torts § 541).

Here, Plaintiffs were given full access to all of the business and financial records of Kids Count and knew the risks of making an investment of the kind they made. Their first meeting

with Esralew lasted four or five hours, during which Terry learned about the background and business of Kids Count; and from the time the parties were first introduced, they were talking everyday, spending substantial amounts of time meeting (including a 10 hour marathon meeting looking at revenue/expense spreadsheets prepared by Soskin and discussing Kids Count's business), and asking questions. In addition, Terry will testify that he asked Soskin to help Esralew develop proper documents for him to analyze as an investor; that he deemed all of the information that he had been given sufficient to make an investment in Kids Count; and that all of the other questions he asked were answered. Moreover, although few investors can require the companies in which they invest to hire their law partners, have bi-monthly meetings with them and give them security interests and seats on the Board, that is precisely what the Plaintiffs both insisted upon and received.

"Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field at* 70. Each of the Plaintiffs in the instant case is an attorney and an experienced businessman, or related to an attorney and experienced businessman. Terry practiced law until he was about 55, after obtaining his JD is from University of Chicago. In addition to taking accounting courses, he was responsible for making financial decisions while owning and operating a company known as Precision Carbide and admits to being intimately familiar with business plans, strategic plans, marketing plans and financial statements, having reviewed in excess of 100 balance sheets during his career. Soskin was employed by Terry's law firm and later became Terry's law partner. He has been an attorney since 1979, a CPA since 1975, and holds himself out as a general practitioner with a heavy emphasis in business

transactions. He claims to be able to do "anything a businessman needs". After fully examining Kids Count's operations and prospects, these two savvy businessmen and attorneys concluded that the Terry Plaintiffs were much protected as secured creditors than as equity owners. In addition, because all of the advances made to Kids Count by the Terry Plaintiffs were made after November of 1998 - while the Plaintiffs were rewriting the infomercial - it is inconceivable that the Plaintiffs could have relied on a representation that the infomercial would be aired before Christmas. Finally, Plaintiffs' implicit claim that they expected Esralew to continue working exclusively for Kids Count without an income and/or that she wouldn't be correctly advised at some point in the future that the restrictive covenant she had agreed to was unlikely to be enforceable, simply strains credulity.

There is also no evidence that anything Esralew did (or didn't do) caused the Plaintiffs any harm. Proximate cause is both causation in fact, that is: "loss suffered by one who justifiably relies upon the truth of the matter misrepresented, if his reliance is a substantial factor in determining the course of conduct that results in his loss;" and legal causation, that is "if the loss might reasonably be expected to occur from the reliance." Restatement (Second) of Torts §§ 546, 548A; See also *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir.1991); *In re Grant*, 237 B.R. at 117; *Shannon v. Russell (In re Russell)*, 203 B.R. 303, 313 (Bankr.S.D. Cal. 1996). Here, the evidence will demonstrate that the only "cause" of the Plaintiffs' damage was the ineffectiveness of the infomercial, which the Plaintiffs were heavily involved in producing and writing, and their subsequent abandonment of, and refusal to continue funding, Kids Count when the infomercial failed to produce the results they were hoping for and they couldn't attract any other investors in the business.

Finally, all of the Plaintiffs' claims attributable to any of Esralew's representations which Plaintiffs knew or believed to be false prior to October 12, 1999, are barred because there is no evidence that the Plaintiffs took any affirmative actions or sought to enforce any "debt" arising therefrom within the five (5) year statute of limitations period pertaining to common law fraud actions in the State of Illinois. See: *Banks v Gill Distribution Centers, Inc.*, 263 F. 3d 862, 867 (9th Cir. 2001), *McKendry v. McKendry*, 40 F.3d 331, 336, 337 (10th Cir. 1994).

**III.    The Plaintiffs Are Unable to Prevail on Count III of the Complaint**

In order for Plaintiffs to prevail under 11 U.S.C. § 523(a)(4), they must prove both that the purported liability in issue arose (a) while Esralew acted in a fiduciary capacity and (b) from Esralew's fraud or defalcation. *Global Express Money Orders, Inc. v. Davis (In re Davis)*, 262 B.R. 673, 682 (Bankr.E.D.Va.2001). The term "fiduciary" is narrowly construed and the term "fiduciary capacity" is limited to actions by individuals under express or technical trusts that existed before the defalcation claim arose. *Id*. Accordingly, the exception from discharge applies "... only to a debt created by a person who was already a fiduciary when the debt was created." *Id*. (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934). [2]

The Seventh Circuit has held that only those fiduciary obligations in which there is a substantial inequality in power or knowledge in favor of the debtor seeking the discharge and

---

[2]    Although this Court has already correctly pointed out that a member/manager of a limited liability corporation owes a duty of loyalty to the other members, citing 805 ILCS 180/15-3(b), (g)(2). [Tr. 8/23/06 p. 19], any fiduciary duty owed by Esralew to Plaintiffs arose out of her position as an officer, not a "member", of Kids Count. Kids Count's managing member was not Esralew but, rather, Kids Count Entertainment, Inc., which owned 94% of Kids Count (reduced to 92% when the Agreement was signed, with the 2% difference going to Soskin).

11

against the creditor resisting discharge are included under § 523(a)(4). See: *In re Marchiando*, 13 F.3d 1111 (7th Cir.1994); and *In re Woldman*, 92 F.3d 546 (7th Cir.1996). The test is whether there is "a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendency over the latter." *In re Frain*, 230 F.3d 1014 , 1017 (7th Cir.2000). The Seventh Circuit has also held that the mere negligent breach of a fiduciary duty is not a defalcation. *Meyer v Rigdon*, 36 F.3d 1375, 1384 (7th Cir. 1994) citing: *In re Marvin*, 139 B.R. 202, 205 (Bankr.E.D.Wis.1992) (citing *Gleason v. Ihaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)).

Here, the evidence will also show that between the date the Agreement was signed and the time the Plaintiffs abandoned Kids Count in May of 1999, no substantive financial decisions could be made by Esralew without the input and acquiescence of the Plaintiffs; and, thereafter, the best Esralew could do without the Plaintiffs' promised funding was to license Kids Count's intellectual property to others with the hope of putting Kids Count into the position of being able to repay its creditors, including the Plaintiffs. Esralew never enjoyed the requisite position of ascendency over the Plaintiffs. Nor is there evidence that Esralew's purported failure to account for Kids Count's results of operation after Plaintiffs abandoned the company was anything more than negligent. Accordingly, the Plaintiffs cannot prevail on Count III of the Complaint.

**IV.    The Plaintiffs Are Unable to Prevail on Count IV of the Complaint**

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Supreme Court concluded that the language of 11 U.S.C. § 523(a)(6) encompassed only acts done with the actual intent to cause injury, and not merely intentional acts that happen to cause injury. Under *Geiger* and its

progeny, the willful injury requirement of § 523(a)(6) is met only when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct. See *Branch Banking & Trust Co. of Va. v. Powers (In re Powers)*, 227 B.R. 73 (Bankr.E.D.Va.1998).

In addition to the fact that many of their claims are already barred by the statute of limitations, the Plaintiffs are unable to produce any evidence that Esralew did, or failed to do, a single thing for the purpose of injuring the Plaintiffs, or with the belief that injury was certain to occur; or that she had any motive to injure the Plaintiffs. Moreover, although none of Esralew's acknowledged efforts to raise additional capital from new investors panned out, the undisputed evidence will show that the Plaintiffs were perfectly willing to let her "drive the bus" in this regard. They had "tag-along rights" under the Agreement! In fact, Terry has testified that he knew that Kids Count was in financial trouble and his investment at risk, but that he and Soskin relied on Esralew to seek new investors in the company.

Finally, Plaintiffs' contention that Esralew sold Kids Count's assets for less than fair value, or otherwise, will be belied by uncontroverted evidence that Kids Count continues to exist in good standing in the State of Illinois; still owns its assets; and that Esralew caused Kids Count to enter into various distribution and licensing agreements, after notice to the Terrys, with the hope of putting Kids Count into the position of being able to repay its creditors, including the Plaintiffs! These agreements establish that Kids Count remains the owner of its copyrights and products and was to receive either or both marketing fees and/or minimum and percentage royalties on sales of such products. See: *Fla. Outdoor Equip., Inc. v. Tomlinson (In re Tomlinson)*, 220 B.R. 134, 137 (Bankr. M.D. Fla. 1998) (holding that the debtor's failure to turn

over inventory proceeds pledged to a creditor to keep the business operative was not an intentional act to cause injury under § 523(a)(6)).

There is not a shred of evidence that Esralew performed a single act with the actual intent to cause injury to anyone; that she had any motive to inflict injury to anyone; or that she believed that anything she did, or didn't do, was substantially certain to cause injury to anyone. The evidence also shows that the Terry Plaintiffs continue to have the right to seek to enforce their security interests, if any, in Kids Count's property; and that Soskin continues to have the right to seek to enforce all of his rights as a "member" of Kids Count under the Illinois Limited Liability Company Act.

## CONCLUSION

One of the most important benefits of the bankruptcy code is its ability to offer a debtor a fresh start. This concept of a fresh start demands courts construe exceptions to discharge narrowly. *Meyer v Rigdon,* 36 F. 3d 1375, 1385, (7th Cir. 1994)*; Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999) (citing *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir. 1994)); *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1016 (Bankr.N.D.Ill.1996) (citing *Mayer v. Spanel Int'l., Ltd.*, 51 F.3d 670, 674 (7th Cir.1995)). Courts balance this belief with the principle that "perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code." *In re Biondo*, 180 F.3d at 130 (citing *Cohen v. de la Cruz*, 523 U.S. 213, 217, 118 S.Ct. 1212, 140 L. Ed.2d 341 (1998)).

Moreover, under Bankruptcy Rule 4005, the Plaintiffs have the burden of proving non-dischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Sheridan*, 57 F 3d 627, 633 (7th Cir. 1995); *Kress v Kusmierek (In re Kusmierek)*,

Case 04-03774    Doc 99    Filed 12/04/06    Entered 12/04/06 13:00:13    Desc Main
          Document        Page 15 of 15

224 B.R. 651, 655 (Bankr. N.D. Ill 1998); *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir.1994); *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988); *Whitson v. Middleton (In re Middleton)*, 100 B.R. 814, 818 Bankr.E.D.Va.1988).

The Plaintiffs are unable to prove any grounds upon which to deny Esralew the relief she has sought in her bankruptcy petition. First, they are unable establish that Esralew made any representations that she knew to be false with the intention of deceiving them, that they took any affirmative action or sought to enforce any debt attributable thereto within five years after learning that any such representations were false, or that they justifiably (or otherwise) relied on any of such representations resulting in their damage. Second, they are unable to establish that any of Kids Count's indebtedness to them arose while Esralew acted in a fiduciary capacity <u>and</u> from her fraud or defalcation. And, finally, they are unable to establish that any action or inaction on the part of Esralew was done with the actual intent to cause them injury, that Esralew had any motive to inflict injury on them, or that Esralew believed that injury was substantially certain to occur as a result of her conduct. Accordingly, Esralew respectfully prays for the entry of judgment in her favor and against Plaintiffs.

        Respectfully submitted,

        Vicki Esralew
        BY:/s/ Carey M. Stein
        One of her attorneys

Carey M. Stein
ASHMAN & STEIN
Attorneys for Defendant
150 North Wacker Drive
Suite 3000
Chicago, Illinois 60606
(312) 782-3484
\\Workgroup\disk 1\carey\ACTIVE\esralew adv soskin\Trial\Trial Brief.wpd